## LOWENTHAL *vs.* THE STATE.

[INDICTMENT FOR EMBEZZLEMENT.]

1. *Sufficiency of indictment.*—An indictment for embezzlement, in the form prescribed by the Code, (p. 702, No. 36,) is sufficiently certain and definite.
2. *What constitutes embezzlement.*—Under an indictment against a clerk for the embezzlement of a bill of exchange, (Code, § 3143,) a conviction may be had on proof that the prisoner fraudulently disposed of the bill, which had come to his possession by virtue of his employment, although it first came to the possession of his employer.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. MCKINSTRY.

THE indictment in this case was in these words:

" The grand jury of said county charge, that, before the finding of this indictment, Jules Lowenthal, being the agent or clerk of Henry Sengstak, (the said Jules not being an apprentice, or under the age of eighteen years,) embezzled, or fraudulently converted to his own use, money to about the amount of eighteen hundred dollars, and a bill of exchange to about the amount of eighteen hundred dollars, which came into his possession by virtue of his employment; against the peace and dignity of the State of Alabama."

The rulings of the court on the trial, to which exceptions were reserved, are thus stated in the bill of exceptions:

" The State offered in evidence a certain bill of exchange, dated New York, May 4, 1857, purporting to be drawn by Samuel B. Matthews, in favor of Mad. Diaden, on Rives, Battle & Co. of Mobile, for $1800, payable on the 1st day of January next after date; which bill was shown to have been signed by Samuel B. Matthews. To the introduction of this bill as evidence the prisoner, by his counsel, objected; the court overruled his objection, and allowed said bill to go to the jury; and the prisoner excepted.

" The State introduced the book-keeper of Rives, Battle & Co. as a witness, who testified, that the prisoner called at the office of Rives, Battle & Co. on the 24th December, 1857, and presented said bill of exchange to a member of the firm for acceptance; that the latter told him, as the bill had but a few days to run, they would cash it, if the interest to accrue between that time and its maturity were taken off; that the prisoner then left the office, but returned in a few minutes, and said, 'We will do it,' or 'They will do it,' (the precise words witness could not recollect;) that Rives, Battle & Co. thereupon gave the prisoner their check for $1785 61, whereupon the prisoner wrote at the bottom of the bill the following words: 'Rec'd payment, Sengstag & Co., pr. J. Lowenthal,' and then delivered said bill to Rives, Battle & Co. Said witness testified, also, that it was customary in Mobile to pay bills, having but a short time to run, when they were presented for acceptance, by taking off the interest. To the introduction of this evidence, as to custom, the prisoner, by his counsel, objected; the court overruled the objection, and allowed the evidence to go to the jury, and the prisoner excepted.

" It was shown that the said check had been paid by the bank on which it was drawn; but there was no proof that the prisoner had presented it for payment, or that he received the amount of it. The State introduced one Hye as a witness, who testified, that he was the agent in Mobile of the mercantile firm of Sengstag & Co., which firm consisted of Henry Sengstag, and Meyer, and Stenckle, who resided in New York, and was engaged in the foreign commission business; that Sengstag was the controlling and managing partner, and the other partners, by an agreement which had never been published to the world, shared with him in the profits and losses; that the prisoner, on the 24th December, 1857, was a clerk of said firm in Mobile; that his duties were to copy letters, deposit letters in the post-office, and go on errands; that the said bill of exchange, on the 24th December, 1857, came into the possession of witness, as the agent of Sengstag & Co.; that it had been sent to them for collection; that witness

handed the bill to the prisoner on the same day, with instructions to present it to Rives, Battle & Co. for acceptance, and then return it to witness; that the prisoner never had possession of said bill, until it was so handed to him by witness; that the prisoner had no authority, either from Sengstag & Co., or from witness as their agent, to collect the amount of the bill, nor to negotiate, discount, or dispose of it in any way, but was simply instructed to present it for acceptance, and there his duty and authority ended; and that his possession of the bill was a mere custody for the purpose of presentation.

"It was shown, also, that when the prisoner returned to the office of Sengstag & Co., on the 24th December, 1857, nothing was said about the bill; that when he was sent for it on the next day, he returned, saying, that both of the Mess. Battle were out of town, but they would accept the bill when they returned, and send it to Sengstag & Co.; that on the 26th December the prisoner went to New Orleans, without informing his employers of his intention; that they looked for him there, but could not find him; that they then offered a reward for him, and he was arrested by the police, and brought back to Mobile; that the prisoner had never paid any money to Sengstag & Co. on account of said bill, was over twenty-one years of age, and was not an apprentice; that Sengstag & Co., and Rives, Battle & Co. were merchants in Mobile; and that the facts above detailed occurred in Mobile county.

"This was all the testimony in the case; and thereupon the court instructed the jury, among other things, that if they believed from the evidence that the prisoner was the clerk of Sengstag & Co., and received the bill of exchange from them, or from their agent, with instructions to present it to Rives, Battle & Co. for acceptance, and then to return it; and that, instead of doing so, he fraudulently converted it to his own use,—such conversion was an embezzlement under section 3143 of the Code, although they should believe from the testimony that he had no authority to negotiate, discount, or in any way dispose of the bill; and this is so, if they were satisfied that the bill had first come to the possession of his employers.

"The prisoner excepted to this charge, and then requested the court to instruct the jury as follows:

"1. That if they believed from the testimony that the bill of exchange first came into the possession of his employers, the subsequent conversion or appropriation of it by the prisoner did not constitute the offense of embezzlement.

"2. That if they believed from the testimony that the prisoner had the mere custody of the bill, for the purpose of presenting it for acceptance, his subsequent conversion of it did not constitute the offense of embezzlement under section 3143 of the Code.

"The court refused both of these charges, and to the refusal of each the prisoner excepted."

After conviction, the defendant moved in arrest of judgment, on the following grounds: "1st, because the indictment is too general, vague, and uncertain; 2d, because it does not describe the bill of exchange with sufficient particularity; 3d, because it should have set out the bill according to its terms, or, at any rate, have described the bill by its date, amount, names of parties, and to whom it belonged; and, 4th, because it should have contained an averment that there was an intention to defraud." The motion in arrest was overruled.

PERCY WALKER, for the prisoner.—1. The motion in arrest of judgment ought to have been sustained, because the indictment, though in the form prescribed in the appendix to the Code, is utterly wanting in that certainty which is essential to put the party upon his defense; that certainty which, as this court said in Noles v. The State, 24 Ala. 672, every indictment must contain—such "as furnishes the accused reasonable information of what he is called on to answer, by setting forth the constituent averments which, at common law, were necessary to the validity of an indictment." That the averments of the indictment are fatally defective, see Martin & Flinn v. The State, 28 Ala. 71; Regina v. Parker, 3 Adolph & El. (N. S.) 292.

2. The court erred in the charge given, and in the refusal of the several charges asked. All the authorities, English and American, in defining the offense of embezzlement, lay down as a fundamental rule, "that the money, or other thing, must not come into the master's possession before it does into the servant's; for, if it does, the taking of it, whether delivered to the servant by the master or not, is larceny."—2 Bishop's Criminal Law, § 301, and authorities there cited; Rosc. Crim. Ev. 446.* The uniform construction thus given to the several English statutes, from 21st Henry VIII, ch. 7, to 7th and 8th George IV, ch. 29, led to the enactment, in 1844, of the state 14th and 15th Victoria, ch. 100, § 13, which gave the jury power to find a verdict for either larceny or embezzlement, as the facts of the case might justify. Our statutes on this subject are borrowed from the English, except that we have no provision similar to their act of 1844; and the distinction between larceny and embezzlement, under this statute, was distinctly recognized in Case v. The State, 26 Ala. Rep. 17. The New York statute, on which is founded the case of Dalton v. The People, 15 Wendell, 581, is essentially different from ours.

M. A. Baldwin, Attorney-General, contra.—1. The indictment conforms precisely to the form prescribed by the Code, and, consequently, must be deemed sufficient.

2. Embezzlement is the fraudulent appropriation, by a servant, of goods entrusted to him by his master.—2 Bish. on Criminal Law, 302. The statute was designed to protect employers against the frauds of those in whom they have reposed confidence. The evidence brought the case within the express terms of the statute, and justified the charge of the court.—The People v. Dalton, 15 Wendell, 581; The People v. Sherman, 10 Wendell, 298.

STONE, J.—The indictment in this case strictly pursues the form given in the Code, (p. 702, form 36,) and is sufficient.—Noles v. The State, 24 Ala. 672; Elam v. The State, 25 Ala. R. 53; Burdine v. The State, 25 Ala. 60; Sherrod v. The State, 25 Ala. 78; Thompson v. The State,

25 Ala. 41; Salomon v. The State, 27 Ala. 26; Rogers v. The State, 26 Ala. 76.

[2.] The main question raised by the discussion in this case is, was the act of the prisoner, for which he was indicted, larceny or embezzlement? For the prisoner it is urged, that he was not guilty of embezzlement, because the bill of exchange had been in the possession of the employer, before it came into the possession of the prisoner as his clerk; and under these circumstances, the conclusion is claimed, that, if he subsequently disposed of it fraudulently, *cum amino ferandi*, and without authority, he is guilty of larceny. The English decisions upon their statutes of 3d and 4th George, come fully up to this doctrine.—See them collected in 2 Bish. Cr. Law, § 301, notes 1, 2, 3, 4. This principle, if it be applied to our statute, must work a reversal of this case.

We think, however, that there is a substantial difference between the English statutes and ours. Their first enactment was 21 Henry VIII, ch. 7. It declared, that when any "caskets, jewels, money, goods, or chattels," were delivered to servants by their masters or mistresses, "to keep, if any such servant or servants withdraw him or them from their said masters and mistresses, and go away with the said caskets," &c., "to the intent to steal the same," &c. It is obvious that this statute had but a restricted operation.

The statute of 39 George III, ch. 85, declared, that "If any servant, or clerk, or if any person employed for the purpose in the capacity of servant or clerk, to any person or persons whomsoever, or to any body corporate or politic, shall, by virtue of such employment, receive or take into his possession any money, goods, bond, bill, note, bankers' draft, or other valuable security or effects, *for, or in the name, or on the account of his master or masters, employer or employers,* and shall fraudulently embezzle, secrete, or make away with the same," &c.

The later statute 7 and 8 Geo. IV, ch. 29, employs language of similar import to that which I have underscored above. Its language is, "receive or take into his possession," &c., "for, or in the name, or on the account of

his master, and shall fraudulently embezzle the same," &c.

The words in the English statutes copied above, *for, or in the name, or on the account of his master*, show clearly that the money, goods, &c., to come within those statutes, must have been taken or received from some person other than the master and employer. To say that a clerk received or took goods, &c., from his employer, *for*, or *in the name*, or *on the account* of said employer, would be a palpable solecism. We think the English decisions upon their statutes are manifestly correct.

Our statute, Code, § 3143, contains no such clause as that copied and commented on above. Its language is, "Any officer, agent, or clerk of any incorporated company, or clerk or agent of any private person or copartnership, except apprentices and other persons under the age of eighteen years, who embezzles, or fraudulently converts to his own use, any property of another, which has come into his possession by virtue of his employment, must, on conviction, be punished as if he had feloniously stolen such property."

The language of this section is much more comprehensive than either of the English statutes. It embraces and provides punishment for every case of embezzlement of property of another, which has come into the possession of the clerk or agent *by virtue of his employment*. The bill of exchange mentioned in the record was the *property of another*, and it went into the possession of the prisoner "by virtue of his employment" as clerk of Sengstag. The case is within the very letter of the statute.

The New York statute—2 Rev. Stat. 678, § 59—is substantially like ours, on the question we have been considering.—See 2 Bish. Crim. Law, § 302, note 2. We have no doubt that our legislation on this subject, although not verbally identical, was taken from the New York statute. See Clay's Digest, 421, § 31; Code, § 3143. The New York statute had been construed in that State before our penal code was adopted.—See People v. Sherman, 10 Wen. 298; People v. Dalton, 15 Wend. 581. With their decisions, the views here expressed harmonize fully.

If it be objected that, under our construction, convic-

tions for embezzlement may be had upon facts which constituted larceny at common law, we answer that, conceding it to be so, we know of no principle which denies to the legislature power to make such provision. There is nothing in the case of Case v. The State, 26 Ala. Rep. 17, which militates against these views.

The city court committed no error in the reception of evidence; and the charge was strictly in accordance with the views above expressed.

Judgment of the city court affirmed.