## HINDERER *vs.* THE STATE.

[INDICTMENT FOR EMBEZZLEMENT.]

38 415
129 83

1. *Who is agent.*—A person who is employed by a post-commissary to superintend a bakery, and whose duty it is to receive all the flour sent to the bakery by the commissary, to have the same made into bread at the bakery, and to deliver the bread on the order of the commissary, may be indicted for embezzlement (Code, § 3143) as the agent of the commissary.

FROM the Circuit Court of Montgomery.
Tried before the Hon. NAT. COOK.

THE indictment in this case charged, " that Fred Hinderer, *alias* Fred Hindree, an agent or clerk of George O. Janney, not being an apprentice, nor under the age of eighteen years, embezzled, or fraudulently converted to his own use, ten barrels of flour, of the value of one hundred dollars, which came into his possession by virtue of his employment." The only plea was, not guilty. " On the trial," as the bill of exceptions states, " the following facts appeared in evidence : The offense charged was committed in Montgomery county, about the 10th November, 1862. About the 1st September, 1862, George O. Janney was appointed post-commissary of subsistence of the Confederate Government in the city of Montgomery. His duty was to receive flour furnished to him by the government, have it made into bread, and distribute it to the troops of the government at that place. To accomplish this, he leased a bakery in said city, paying the rent monthly, and employed persons to make the flour into bread ; and he employed the defendant to take charge and superintend the bakery, and the making the flour into bread. All these contracts were made in his own name, and without the knowledge or authority of the government or its officials ; and he paid the employees monthly, and the receipts given by them for their pay were given to him as post-commissary of subsistence, being so expressed in them. Under the contract made with Janney, the defendant was to receive all the flour sent by Janney to the bakery, to have the same made into bread at the bakery, and then deliver the bread on the order of Janney ; the flour to be received by him at the bakery, and the bread to be delivered by him at the bakery. He kept the keys of the bakery ; and the establishment, with the flour and bread while there, was under his exclusive control, subject alone to the directions of Janney. While in this employment, which commenced in September, 1862, he received from

Janney at the bakery, for the purposes aforesaid, ten barrels of flour, which he removed from the bakery secretly by night, and concealed in another house; but none of the barrels was opened, nor was any part of their contents abstracted. One Young obtained permission for him from one Altschief to deposit the flour in his back room, where it was found, covered up with scraps of pasteboard and other things. The prisoner deposited it there in Young's name, because he would be charged storage if it were deposited in his own name. When asked why he took the flour, he replied, that he was not receiving wages enough to support him. Janney testified, that he considered himself responsible to the government for all the flour he received; that whenever he sent any flour to the bakery, he took the defendant's receipt for the same when it was delivered at the bakery; that he made out his accounts with the government, and forwarded them at the end of each month, by mail, with his vouchers, to the proper officer of the government; that said accounts embraced what he paid for the bakery, and to the employees, (including the defendant,) with their names, and the amount paid each; that he had not received any reply in relation to his accounts for September or October, and had not heard whether they had been passed and approved or not. This was all the testimony in the case, and there was no conflict in the evidence. The questions argued before the court and jury were, mainly, whether the defendant was a clerk or agent at all; and if so, whether he was the clerk or agent of Janney, or of the government."

"The court charged the jury, that the defendant might, under the testimony, be the agent or clerk both of Janney and the government; and that if they believed he was the agent of both, and received the flour as the agent or clerk of Janney, to be made into bread, and secretly removed the barrels, with a view to appropriate them to his own use, he was guilty of embezzlement, although he did not abstract any of the flour from the barrels, nor do any thing more than to remove and conceal them.

27

" The defendant excepted to this charge, and requested the court to instruct the jury :

" 1. That if, from the evidence, they entertained a reasonable doubt whether the defendant was the agent or clerk of Janney or of the Confederate Government, then he must be acquitted.

" 2. That if, from the evidence, they found that Janney, as post-commissary of subsistence at Montgomery, leased a bakery for the use of the government, and employed persons to work therein for the government, and employed the defendant as a baker for the government, to bake bread for the government troops, Janney's duties being to supply bread to those troops ; and that the officials of the government, who had the proper authority, after full information of what Janney had done, ratified all that he had done—then the defendant was not the agent or clerk of Janney, and could not be convicted under the indictment.

" 3. That if, from the evidence, they found that Janney was post-commissary of subsistence at Montgomery, for the Confederate Government ; and that his duties were, to receive flour from the government, and to have it baked into bread, to be supplied to the government troops ; and that, to discharge these duties, he leased a bakery in Montgomery, and employed the defendant to bake bread for the government ; and that Janney paid for the lease, and for the employment of the defendant, and charged it to the government, and forwarded his accounts monthly, by mail, to the proper department ; and that a sufficient time has elapsed for the proper officials to receive and examine his accounts, and they do not object to what he has done,— this is a sanction of what he has done, and their silence is a ratification of what he has done ; and this ratification makes the defendant an agent or clerk of the government ; and that if the offense charged was committed subsequent to the time when said accounts and information were received by the officials aforesaid, and after a reasonable time had elapsed for them to express their objections to what Janney had done, and they had not made any objections thereto, then the defendant cannot be convicted.

"4. That if the evidence showed that Janney, as commissary and agent of the Confederate Government, authorized in the usual course of his business and of the duties of his office, employed the defendant for and on account of the government, to be employed in business which related exclusively to the government, the defendant thereby became the clerk or agent of the government exclusively, and not of Janney, and cannot be convicted under the indictment."

The court refused each of these charges, and the defendant excepted to their refusal.

JNO. A. ELMORE, for the defendant.

M. A. BALDWIN, Attorney-General, for the State.

STONE, J.—The defendant was tried and convicted under section 3143 of the Code, which provides for the punishment of any clerk or agent of any private person, who embezzles, or fraudulently converts to his own use, any property of another, which has come into his possession by virtue of his employment, &c. The only reason urged in this court for a reversal, grows out of the question, was the defendant, under the facts of this case, the clerk or agent of George O. Janney?

Agent, in the sense here employed, means, "one who is authorized to act for another; a substitute; a deputy; a factor."—Worcester's Dictionary; *Brooks v. The State*, 30 Ala. 516.

The objection urged is, that the defendant was the agent of the Confederate States Government, and not of Mr. Janney. We cannot assent to this proposition. Mr. Janney was the post-commissary; and according to the only testimony in the case which bears on this question, "he (Mr. Janney) employed the defendant to take charge and superintend the bakery, and the making the flour into bread. All these contracts were made in his (Mr. Janney's) own name, and without the knowledge or authority of the government, or its officials; and he paid the employees monthly,

and the receipts given by them for their pay, were given to him as post-commissary of subsistence, being so expressed in them." These acts clearly show that the defendant was the employee of Mr. Janney. Do they tend to show that he was the agent of the government? There can be no agency without the corresponding relation of principal.—2 Bish. Cr. Law, § 286. Was the Confederate Government the defendant's principal? The acts of an agent, within the scope of his authority, are the acts of his principal; and the principal is responsible, civilly, for the consequences of negligence, or want of skill in the agent, while performing duties within the purview of the agency. Could these liabilities attach to the Confederate Government, under the circumstances disclosed in this record? Most certainly they could not. As well might it be contended, that the drayman, who, under a contract with the commissary, transports to the latter supplies purchased by him, is the agent of the government, as that this defendant is.

If the defendant had contracted with the government, was to account with the government, or to look to it for compensation, the rule would probably be different. Here, he had no claim upon the government for his compensation, nor were the rates of his wages subject to be controlled or modified by its will. His wages were stationary, and fixed by contract with Mr. Janney; and the latter, if sued for the price, would not be heard to assert his want of authority to make the contract, nor to deny his personal liability upon it. Neither could the defendant, in any event, claim compensation of the Confederate Government.—*Jones v. Dawson*, 19 Ala. 672.

In England, under a statute which strikingly resembles ours in this respect, it was ruled, that a servant in the employment of A. & B., who are partners, is the servant of each; and if he embezzles the private money of one, may be charged under the statute as the servant of that individual partner.—*Rex v. Leech*, 3 Starkie, 70.

In the case of *Regina v. White*, (8 C. & P. 742,) White

was indicted as the servant of one Bricknel. It appeared
that Bricknel was one of several proprietors of a stage-
coach, running from Birmingham to Hereford, which coach
Bricknel supplied with horses from Hereford to Malvern.
Bricknel himself was in the habit of driving the coach from
Worcester to Hereford, and employed the prisoner to drive
for him when he did not go himself. All the proprietors
were interested in the moneys received throughout the line;
but Bricknel received and held the money taken on that
part of the line between Worcester and Hereford, and was
accountable to the other proprietors for it. White embez-
zled funds which came to his hands while driving for Brick-
nel; and the court ruled that, as between the prisoner and
Bricknel, the moneys were received to the use of Bricknel,
and that White was the servant of Bricknel.

In the case of *Regina v. Callahan*, (8 C. & P. 154,) the
court held, that the prisoner was servant to those persons
to whom it was his duty to account, although he was ap-
pointed by other persons.

In this case, the defendant received his appointment from
Mr. Janney; and there can be no doubt of his liability and
duty to account with him for the flour intrusted to his
keeping. It came into his possession by virtue of his em-
ployment, and the case is thus brought directly within the
statute.—*Lowenthall v. The State*, 32 Ala. 595; *People v.
Sherman*, 10 Wend. 298; Ros. Cr. Ev. 443–4.

It is, perhaps, not material to inquire, whether the pris-
oner may not have been also the servant of Mr. Janney. A
servant, whenever he is clothed with authority to act, or
exercise judgment or control, in the absence of his master,
is an agent of the latter.—2 Kent's Com. 622, note;
1 Burrill's Law Dictionary, 73; *Powell v. The State*, 27 Ala.
51; *Stanley v. Nelson*, 28 Ala. 514. We hold, however,
that if Mr. Janney's testimony be believed, the defendant
was, in this service, strictly an *agent*. He was employed
to take charge of and superintend the bakery. It nowhere
appears that he was even a baker, or had anything to do
with the baking, further than " to take charge and super-

intend the baking, and the making the flour into bread."

If there be any fault in the affirmative charge, it was too favorable to the prisoner. The bill of exceptions informs us, that it contains all the evidence; and there is no testimony which tends to show that the defendant was the clerk or agent of the Confederate Government.

The first and second charges asked by the defendant, and refused by the court, were abstract, and should not have been given. The third and fourth charges are in conflict with the principles we have declared above, and were rightly refused.

There is no error in the record, and the judgment of the circuit court is affirmed.