THE TERRITORY OF NEW MEXICO, Appellee, v. GEORGE W. MAXWELL, Appellant.

*January 30, 1882.*

JURY (1) *Finding by, not disturbed.*

EMBEZZLEMENT. (2) *Indictment need not state purpose for which accused received money.*

SAME. (3) *Accused need not have received money from some one other than principal.*

SAME. (4) *What relation must be shown between accused and his principal.*

SAME. (5) *Money need not be specifically described.*

COMMON LAW. (6) *What is not, as to embezzlement.*

1.  The jury are the judges of the weight and credibility of evidence, and where there is a conflict of testimony, their finding will not be disturbed if sustained by any testimony.

2.  An indictment for embezzlement need not state the object for which the money embezzled was originally received by the accused.

3.  Under the statute of New Mexico (Gen. Laws, sec. 22, page 268) relating to embezzlement and providing that "If any officer, etc., shall embezzle or fraudulently convert to his own use any money or property of another, which shall have come to his possession or shall be under his care, by virtue of such employment, he shall be deemed," etc., it is not necessary to show, in order to convict of embezzlement, that the money was received by the defendant from some one on account of the defendant's principal, and not from such principal directly. There is no limitation in the statute of New Mexico as to the manner of the money coming into the possession or control of the accused, nor as to the person from whom it may so come to him.

4.  To sustain an indictment for embezzlement it is enough if the relation between the accused and his principal be shown to have been the relation of principal and agent. He need not have been technically the "clerk" or "servant" of the principal.

5.  In an indictment for embezzling money it is not necessary specifically to describe each particular coin or bill embezzled. All that is required is the best description which the circumstances will permit, both in the indictment and upon the trial.

6.  The act of parliament passed in 1799 (39 Geo. III.) relating to embezzlement and the decisions of courts construing it, are not part of the common law of New Mexico.

Appeal from District Court of Doña Ana county, BRIS-
TOL, J.

At the November term, A. D. 1877, of the district court,
Doña Ana county, the appellant was indicted for the crime
of embezzlement, and was tried at the June, A. D. 1878,
term of said court, and convicted and sentenced to pay a fine
of $500 and costs of prosecution.

The testimony adduced at the trial shows that appellant
was intrusted with $10,000 in money, the property of one
Mrs. Daily (afterwards Mrs. Rea). That said Mrs. Daily was,
at the time she gave the money to appellant, a partner in
business (general merchandise) with appellant; that said
money was originally given to appellant by his said partner
to loan out at interest; that said money was so loaned out to
different parties by appellant, and finally was loaned by
appellant to the firm of "G. W. Maxwell & Co.,"which said
firm was composed of said appellant and Mrs. Daily; that the
money was never paid back by appellant to Mrs. Daily,
except the sum of $1,060—the balance of the said $10,000
was expended in paying the debts of said copartnership; that
appellant on August 17, 1877, rendered an account of this
money to Mrs. Daily, showing the amounts he had expended
on her account and the balance still due her; that upon the
dissolution of said company, appellant turned over to Mrs.
Daily all the property and effects of said company, valued at
about $31,000, and Mrs. Daily was to pay the debts due by
the company, which amounted to some $16,000.

————, for appellant.

*First.* The indictment charges that the money was received
in the name and for the account of Mrs. Daily.

The testimony shows receipt of money with directions to
be loaned at interest.

*Second.* The indictment does not prescribe any particular
article alleged to have been embezzled, sufficiently: *State v.*

Territory of New Mexico v. Maxwell.

*Edson*, 10 Louisiana " A.," 228 ; *People v. Cox*, 40 Cal., 277; Russell on Crime, 185.

*Third.* The proofs show the money was loaned to a partnership and in effect paid back, and only shows bad judgment, and at most a breach of trust, but not embezzlement.

*Fourth.* The indictment does not show the object for which the money was received by the defendant : 2 Russell on Crimes, 195.

*Fifth.* Proofs do not show the conversion of any single article by description, which does not establish embezzlement : Russell on Crimes, 184, 186.

*Sixth.* The proofs show that defendant made no concealment, but shows that defendant admitted loaning money to the partnership, alleging a right in himself to so do. This is not embezzlement: Fisher's Dig. Crim. Law, 119; Roscoe Crim. Ev., 416, 402.

*Seventh.* Proofs show that the money was received by defendant from his principal direct, and not from some one else for and on her account, which cannot be embezzlement: *King v. Howe*, Fisher's Dig., 119 ; Russell on Crimes, 166, 180; 2 Bishop Crim. Law, 352.

*W. L. Rynerson and William Breeden*, for appellee.

Upon all the points and propositions of fact relied upon for the defense, there was a conflict of evidence, which the jury passed upon, and it is not competent for this court to review the finding or attempt to settle conflicts of evidence, or the credibility of witnesses.

As to first point of appellant. The evidence shows that the money was intrusted to the defendant for a certain purpose. If he appropriated or converted it to his own use, he was guilty of embezzlement: Compiled Laws of New Mexico, sec. 23, p. 334.

Further, the evidence shows that the defendant loaned the money intrusted to him to Barela and others, and that he afterwards received the same from these parties for and on

account of Mrs. Daily (Rea), which would make the conversion of the same to his own use embezzlement under the common law definition and under our statute: Compiled Laws of N. M., sec. 22, p. 334.

The description in the indictment of the property embezzled is sufficient, as is also the description in the evidence; it was money, and could not be more accurately described: Archibold's Crim. Pleading, 60, 330.

In the concealment and accounting by defendant there is a conflict of evidence which was purely a matter for the jury to determine.

There was sufficient to show and to authorize the jury to find that the defendant received ten thousand dollars from the witness, Mrs. Daily, and that he never returned or repaid it to her, although required so to do. This would make embezzlement under section 23, above cited, of our statute.

And also that he received the money for and on account of Mrs. Daily, from Barela and others, which money was never in her hands or possession, and that the defendant has never paid over the same to Mrs. Daily, although she demanded it of him. This would be embezzlement under the strict common-law definition, and under section 22 of our statute.

The questions involved are matters of fact which it was the province of the jury to determine, and which the jury did determine. This court cannot undertake the trial of the cause upon the evidence, or review the finding of the jury upon conflicting evidence.

PRINCE, Chief Justice: This is a case of embezzlement arising in the third district court, and brought here by appeal.

The defendant was indicted by the grand jury of Doña Ana county, on the 16th day of November, 1877, the indictment setting out that the said Maxwell, on the first day of May, 1877, being then and there employed as agent and

servant of and to Mariacita C. Daily, did, by virtue of his said employment, and while he was so employed, as aforesaid, receive and take into his possession certain money, to wit, etc. (giving seven different descriptions), of the value of $10,000, for and in the name and on the account of the said Mariacita C. Daily, his principal and employer, and the said money    *    *    then and there fraudulently and feloniously did embezzle and convert to his own use, he, the said G. W. Maxwell, not then and there being an apprentice, nor a person under the legal age of sixteen years, and so, etc., "said money, notes and coin, the property of the M. C. Daily, his said principal and employer, from the said M. C. Daily, unfully did steal, take and carry away."

On the next day the defendant interposed a demurrer to the indictment, giving as causes thereof, the following, substantially :

1. That the money or property is not described with sufficient particularity.

2. That it is not set out specifically.

3. There should be a description of both number and denomination of both coin and notes.

This demurrer was overruled by the court, on the nineteenth of November, and thereupon the defendant pleaded "not guilty." The trial then proceeded, and on the twenty-first, the jury rendered a verdict of guilty, and assessed the judgment at a fine of $500.

Thereupon a motion in arrest of judgment was interposed, which was overruled. Judgment was pronounced in accordance with the verdict, and the defendant appealed to this court.

The appellant made his argument on seven points, which appear on his brief, and which we will consider separately, so far as their nature will permit.

The first and the sixth points may be disposed of together, as in each case there was evidence adduced, as to the truth

of which the jury were the sole judges, sufficient to support the verdict. The first point is that, while "the indictment charges that the money was received in the name and for the account of Mrs. Daily," the testimony shows receipt of money with directions to be loaned at interest. As matter of fact there is evidence from defendant himself, as well as from other witnesses, that the greater part, if not all, of the precise money which defendant is charged with embezzling, was received directly from Lesinsky, Barela & Co.; that it was so received "for the account of Mrs. Daily," and so literally "in the name" of that lady; that two of the receipts put in evidence are signed, "Mariacita Daily, pr G. W. Maxwell." The jury had the right to believe this evidence, if satisfied of its truth.

The sixth point is: "The proofs show that defendant made no concealment, but shows that defendant admitted loaning money to the partnership, alleging a right in himself to so do. This is not embezzlement." Without commenting on this proposition as matter of law, it is sufficient to say that there is much in the evidence for which the jury could conclude, if so disposed, that the reverse of the above statement of fact, was, as to concealment, the case. For example, Mrs. Daily, in her evidence, says: "He always told me it was on interest; it was loaned. * * * Two days before August I asked him where the money was. He told me, 'part in the safe, and part was loaned out at interest.' Two days thereafter, he said it was in the company, etc., and again, on the day of the dissolution, he said it was with Lesinsky, Schultz & Barela and in the safe." It is such a well established rule as scarcely to require repetition, that, when there is competent evidence, the jury are the judges of its credibility, and the weight to be attached to it.

From the evidence before them, the jury in this case had a right to believe, if satisfied of its truth, that the defendants made these statements as to the money being loaned out

long after that money, or the most of it, had come back into his possession, and when they were palpably false. The same right of the jury to decide as to questions of fact covers the subject of the fifth point also.

The fourth point is that " the indictment does not show the object for which the money was received by the defend-ant." One authority only is cited as showing the necessity for such an allegation in the indictment, and that is 2 Russell on Crimes, 195. On examination, this authority will not be found to apply to our statute at all. The case there cited was one brought under the English statute 7 and 8 George IV. C. 29, sec. 49 of that statute provided, among other things, that if any chattel, etc., shall be intrusted to any banker, etc., " for safe custody," it should be a misdemeanor, etc. In the case of *Rex v. Mason* (D. & R. N., p. 22), in which the defendant was the proprietor of what was called a weekly savings bank, but which was in reality a kind of lottery, the indictment charged under the statute that the defendant had received the money of the plaintiff " for safe custody." The judge held that " there did not seem to be any such keeping for safe custody as was contemplated by the statute. It will be observed that the point in this case was that the object for which the money was received was wrongly stated, not that it was not stated at all; and at all events, it could have no bearing on an indictment under our statute, which does not refer in any way to the object of the reception.

This brings us to the consideration of the two subjects of most importance and apparent difficulty involved in the case.

The first of these is that raised in the seventh point of the appellant's, which reads as follows:

" Proofs show that the money was received by defendant from his principal direct, and not from some one else for and on her account—which cannot be embezzlement."

Many cases are cited (and they might have been multi-

plied indefinitely) in which it has been held, to use the language of Roscoe, that "the chattel, money or valuable security embezzled by the prisoner must be such as has not come to the possession of his master—if it has come to his possession, the offense is larceny and not embezzlement:" Roscoe Cr. Ev., 445; *Luck v. Smith*, Russ. & Ry., 267; *R. v. Peck*, 2 Russ. Crimes, 180; *Com. v. Berry*, 99 Mass., 428; *Com. v. O'Malley*, 97 Mass., 584; *Com. v. Davis*, 104 Mass., 548; *U. S. v. Hulchanson*, Whart. Prac., 461, and many cases cited in 2 Bishop on Criminal Law, 352.

The cases go so far even as to apply this principle to money received by one clerk from another in the same employ, because the latter was the agent of the owner: *John Murray's Case*, C. C., 275; 5 C. & P., 145.

These authorities would be of much weight, and no doubt might control the determination of this court, if the statutes under which they were promulgated were the same as ours. But in reality the statutes differ in exactly the essential particular required to make those decisions authorities with us.

In both the English Statutes of 39 Geo. III, c. 85, and 7 and 8 Geo. IV, c. 20, the wording is as follows:

"If any clerk or servant, etc., shall, by virtue of such employment receive or take into his possession any chattel, money or valuable security for, or in the name, or on the account of his master," etc.

The recent act of 24 and 25 Victoria, c. 96, in the corresponding section (68), while differing in some other particulars from the older statutes, preserves this same language, that portion of the section reading as follows: "Whosoever being a clerk, etc., shall fraudulently embezzle any chattel, money or valuable security, which shall be delivered to, or received, or taken into possession by him, for, or in the name, or on the account of his master, or employee," etc. In Massachusetts and many other states this language was followed, and all the decisions which make it essential that the property,

Territory of New Mexico v. Maxwell.

money embezzled should have been received from some or other than the employer, will be found to have been pronounced under such statutes. And under these circumstances they are undoubtedly correct as this language, "for or in the name or on the account of," certainly implies that the articles are received for some third party.

But in the law under which we are acting, these words are not employed. In many ways our statute is broader than those which we have quoted, and this is one of the most important of those respects. The wording here is (sec. 22, p. 268, Gen. Laws), "If any officer, etc., shall embezzle, or fraudulently convert to his own use any money or property of another which shall have come to his possession, or shall be under his care by virtue of his employment, he shall be deemed," etc.

There is no limitation as to the manner of the coming to his possession, or under his control, or the person from whom they may so come. This widens the scope of the law very much, and renders the decisions made under the more re-strictive language of the older statutes entirely inapplicable. This we could hold from the very nature of the language employed, and the difference obviously made by the omission of the old restrictive clause without the need of any previous adjudication on the subject; but for those who think that precedent in such cases is of specially great importance, we have also the benefit of previous decisions, rendered under statutes analagous to our own. Thus, in New York the statutory language is as follows: "If any clerk, etc., shall embezzle and convert to his own use, or take, make away with, or secrete, with intent to embezzle or convert to his own use, without the assent of his master or employers, any money, goods, rights in action, or other valuable security, or effects whatever, belonging to any other person, which shall have come into his possession or under his care, by virtue of such employment or office, he shall be, etc.:" 2 R. S. of

N. Y., 678, sec. 59.   Under this law, Judge Cowan, in rendering the decision in the case of *People v. Dalton*, 15 Wendell, 581, said, "The statute is intended to provide for a fraudulent conversion of money or goods by a servant when they are delivered to him as such, either by his master or mistress, or in their behalf by a stranger.   That was but a breach of trust at common law, because the money or goods came to his hands by delivery.   The statute intended to convert such a breach of trust into a crime."

In Alabama, the language of the statute on this subject, is almost identical with our own.   It reads: "Any officer, etc., who embezzles or fraudulently converts to his own use, any property of another, which has come into his possession by virtue of his employment, must on conviction," etc.: Alabama Code, sec. 3143.   The court of that state in a case in which a clerk was indicted for embezzling a bill of exchange which came into his possession from that of his employer, says: "The language of this section is much more comprehensive than either of the English statutes.   It embraces and provides punishment for every case of embezzlement of property of another, which has come into the possession of the clerk or agent by virtue of his employment." "The case is within the very letter of the statute," and Judge Stone, in his opinion of the case, draws very clearly the distinction between the decisions under the English analagous statutes and those whose scope has been enlarged, as those in New York and Alabama, and we may add, New Mexico.   He says: "The words in the English statutes 'for, or in the name or on account of, his master,' show clearly that the money, goods, etc., to come within those statutes, must have been taken or received from some person other than the master and employer.   To say that a clerk received or took goods, etc., from his employer, for, or in the name or on the account of said employer would be palpable solecism.   We think the English decisions upon their statutes are manifestly

correct.    Our statute contains no such clause as that copied
and commented on above :"    *Lowenthal v. State*, 32 Ala.,
589.

We have dwelt to this extent on this topic because the
point was raised and argued at some length on the hearing in
this case, and is of such importance that it did not seem
proper to pass it by without disposing of it.    If, however,
our statute had been similar to that of England, we think
there was no error in this regard in this particular case, as
there was evidence to prove that the money, or, at least, the
greater part thereof, with the embezzling which the defend-
ant is charged in this case, was received by him from various
persons other than Mrs. Daily, that is to say, from Messrs.
Lesinsky, Barela & Schultz.    The fact that the amount rep-
resented by the sums received by the defendant from these
parties had originally come from Mrs. Daily, even if that was
absolutely established, would not affect the case, as the ques-
tion under the English statutes is as to the person for whom
the precise and identical money embezzled was obtained.    In
one well known case, for example, upon an indictment for
stealing a £5 note and certain silver coin, it appeared that the
prisoner's master gave him the £5 note to get change ; this
he did, saying that his master had sent him and that the
change was for him.    He never returned to his master, how-
ever.    The judges, on a case reserved, held that as it was the
silver which had been taken and not the £5 note, and as the
silver had never been in the possession of the master, it was
a case of embezzlement under the statute of 39 Geo. III, and
not stealing :    *Rex v. Sullins*, R. & M. C. C. R., 129 ; and
several analagous cases are cited by Wharton (sec. 1013) as *R.
v. Winnall*, 5 Cox C. C., 326 ; *R. v. Reena*, 11 *Ibid.*, 123 ;
*R. v. Gale*, 13 *Ibid.*, 340, etc.

Before proceeding to the consideration of the points rela-
tive to the description of the property, we will allude to one
other subject which was commented on to some extent in the

argument, that is, that the necessary relation between the defendant and the owner of the property was not charged or made out by proof in this case so as to bring it within the definition of embezzlement.   We refer to this here because the answer to the object we thus raised is substantially the same as that to the question just discusssed, viz.: that the statute of this territory is much broader in its language than those under which the law quoted to us on the subject was promulgated.   The English statute from 39 Geo. III. to 25 Victoria, confine the operations of the law to " any servant or clerk or person employed for the purpose or in the capacity of a servant or clerk," and an enormous amount of time and erudition have been employed during the last century in discussion as to the exact definition of these terms "servant" and "clerk," and as to those who were properly to be considered within or excluded from those classes.   The text books are full of refinements on this subject, and the cases cited show that an almost infinite variety of questions have arisen with regard to it.   See 2 Russell, 168 to 180; Wharton, sec. 1011 to 1020 ; 2 Archibold, 449–454, side paging, etc.

But we are saved from difficulty as to this point by the introduction in our statute (sec. 22, p. 268, General Laws) of the word " agent," which greatly enlarged the application of the law, and makes unquestionable its bearing on many cases which might otherwise be doubtful.   While it might be seriously questioned whether a person intrusted with one business affair for another or performing some one act without renumeration, is a servant, there can generally be no such doubt as to his falling under the definition of an agent ; and at all events on the state of facts as developed in this case, there can be no such doubt.

In speaking of the effect of the introduction into the statutes of this word " agents," Mr. Wharton, whose views as to the crime of embezzlement are generally more technical and contracted than those of other writers on the subject, says :

"As used in the Massachusetts statutes, the term 'agents' is much wider in its signification than 'servants' or 'clerks;' the latter are restricted to the performance of specific acts in a specific way; the former may or may not be restricted, and may, in fact, be clothed with full powers to represent their principal with the same discretion as he might exercise himself:" 1 Wharton's Crim. Law, sec. 1022, and referring to *Com. v. Young*, 9 Gray, 5, and *Com. v. Libbey*, 11 Met., 64.

There can be no doubt that the defendant acted as the agent of Mrs. Daily in the transactions which form the basis of this indictment and trial. His own evidence is to that effect, and in the receipt signed by him across the face of the $6,000 note dated Apr. 20, 1877, he uses that precise term, the signature being "Mariacita Daily per G. W. Maxwell, Agt."

This brings us to what is, perhaps, the most important of the objections raised by the defense to the validity of the indictment and correctness of the judgment, those presented in the second and fifth points. The second point is: "The indictment does not describe any particular article alleged to have been embezzled sufficiently." The fifth point is: "Proofs do not show the conversion of any single article by description, which does not establish embezzlement." For convenience of consideration we will group these two together, as they both relate to the lack of particular description of the property embezzled or any part of it.

On this subject we were referred by counsel to a large number of authorities, and the investigation of the question which seemed necessary for its satisfactory determination, has involved the examination of many more. The indictment in this case charges the defendant with embezzlement of ten thousand dollars, and this is set up in various forms, viz.: As $10,000 in United States currency (commonly called greenbacks); $10,000 in United States national currency notes; $10,000 in United States fractional currency notes; $10,000

in gold coin of the coinage of the United States of America ; $10,000 in silver coin of the coinage of the United States of America ; $10,000 in gold coin of the coinage of the Republic of Mexico, and $10,000 of silver coin of the coinage of the Republic of Mexico ; each being alleged to be of the value of $10,000. It is obvious then that the property charged to have been embezzled was money. Several of the authorities which are cited do not bear directly on the point, because they refer to the embezzlement of chattels, articles other than money, and it is so obvious that a rule of description which might with justice and propriety be enforced as to an ordinary chattel, might not necessarily apply equally to money, either in specie or the usual circulatory paper currency.

The first of these authorities is, *State v. Edson*, 10 Louisiana Annual Repts., 229. In this case, the articles alleged to have been embezzled were " a certain lot of furniture of the value of $400, with a certain lot of lumber of the value of $150, and with certain tools, commonly called cabinetmaker's tools, of the value of $250."

The court decided that the property was not described with legal certainty : " The indictment should have set out specfically, at least one article of the property embezzled." The rule as to such articles and the reason of it, are so well set forth in this decision, that we copy the clause on that subject, especially as it is the rule which the defendant and appellant herein insists should be applied to money as well as ordinary chattels.

The court says, " the rule applicable to indictments for embezzlement, as well as to indictments for larceny, is, that the goods stolen or embezzled should be described, at least in part, with such a certainty as will enable the jury to decide whether the chattel proved to have been stolen or embezzled is the very same with that upon which the indictment was founded, and show judicially to the court that it could have

been the subject matter of the offense charged, and enable the defendant to plead his acquittal or conviction to a subsequent indictment to the same chattel." The next case cited, that of *Stewart v. The Commonwealth*, 4 S. & R. (Pa.), 193, relates to promissory notes. The *State v. Thomas*, 2 McCord, 527, has no special application, a new trial being granted on account of the omission of certain words (not of description) in the indictment, and because the value of a pocketbook was not proven; the real reason as stated by the court being that there were "circumstances which call on the court to exercise a humane discretion," the penalty for the crime (grand larceny, second offense), then being death in South Carolina. The case of *State v. Stinson*, 24 N. J. Law, 22, is a more important authority,.and while it involves at least two questions other than that under discussion, viz. : the lack of any allegation of value of the bank notes alleged to have been embezzled, and the attempted introduction into the case of a "promissory note" which the court decided was not within the words or meaning of the statute, yet in other respects it is a good authority for the appellant, so far as any decision of a state court is authority here. It was brought, however, under a special modern statute, directed solely against the officers and agents of incorporated banks of the state of New Jersey (N. J. Revised Statutes, 125), and is quite technical in its provisions. While so far as it touches on this point, it favors the appellant's view, yet we cannot consider it of itself a controlling authority for New Mexico. These are all of the authorities specially quoted, all being American ; and we will now consider the law as produced to us from the best books and the cases cited therein. The books referred to in appellant's brief are, Bishop's Cr. Law; Bishop's Cr. Prac. and Roscoe's Cr. Evidence, with the English decisions therein quoted. These at first sight, all seem to uphold the theory of the appellant, that the indictment must specially describe, and the evidence identify at

least some one part of the articles charged to have been em bezzled. ' Thus Bishop in his Criminal Law (p. 358) says, " the indictment under the statute must set out specifically some article of the property embezzled ; " an allegation, that the prisoner " took and received divers sums of money, amount- ing in the whole to a large sum of money, to wit, the sum of £10, and afterwards embezzled the same, not being sufficient:" *Rex v. Flowers*, 5 B. & C., 736 ; *Rex v. Freeman*, Russ. & Ryan, 335. " In other words, the indictment must describe according to the fact, some of the identical goods or money. So the evidence must establish the embezzlement of the specific articles described : " *Rex v. Tyers*, Russell & Ryan, 402.

In the case of *Rex v. McGregor* (2 East. P. C., 576), the reason of this particularity is stated as follows : " For that the new offense created by the act of parliament being a larceny, it must be described in the indictment as such, and with all the properties of a larceny." Roscoe says (Criminal Evidence, 447), " It was held upon the statute of 39 Geo. III., that the indictment ought to set out specifically some article of the property embezzled, and that the evidence should support that statement. Therefore, where the indict- ment charged that the prisoner embezzled the sum of one pound, eleven shillings, and it did not appear whether the sum was paid by a one pound note, and eleven shillings in silver, or by two notes of one pound each, or by a two pound note, and change given to the prisoner, on a case reserved, the judges were of opinion that the indictment ought to set out specifically, at least, some articles of the property embezzled, and that the evidence should support the statement, and they held the conviction wrong " (quoting the cases of Freeman and Tyer, *supra*).

The reason of this rule in case of chattels is of course obvious. They should be so described in the indictment that the defendant will be thereby informed with precision

as to the offense with which he is charged, and so proved on the trial as to be identified as the same mentioned in the indictment. It is also proper, in order to afford the defendant an opportunity to prove, if afterwards accused of the same offense, that he has previously being tried therefor. This reasoning applies equally to money, either in specie or current bills, whenever they can be described; but with regard to them a peculiar difficulty arises, which does not exist in ordinary larceny.

In larceny, by the legal theory, the accused takes some article of personal property out of the possession of the owner. The owner consequently is acquainted with the article, and able to give a description of it. But in embezzlement, as a rule, the article taken had never been in the actual possession of the owner, and he therefore has not the means of accurate description which he would otherwise possess. In case of the embezzlement of a chattel, some kind of description fairly accurate, can usually be obtained from the person from whose possession it came to the accused, and in case of a large number of chattels, some one or more, at all events, can be described with sufficient accuracy. But with money, the case is different. After the lapse of a little time, it would be a rare case indeed, in which the third party from whom it was received and who had no special cause or inducement for recollection, could describe the exact bills or pieces of specie which composed it. This is more especially the case at present in this country, where the natural currency is uniform in appearance, instead of presenting the great variety of designs which distinguished bank bills previous to the establishment of the National Bank system, and where the coin does not present even the variety produced in other countries by the change in the monarch's head on the obverse in each succeeding reign.

Even in England, and as long ago as 1827, the impossibility of describing embezzled money in such a way as to

meet the requirements of the law as laid down in the cases cited by the appellants, was so obvious, that the statute 7 and 8 Geo. IV., chap. 29, was passed to remedy the difficulty. Section 48 of that statute provided that, " In every such indictment, except where the offense shall relate to any chattel, it shall be sufficient to allege the embezzlement to be of money, without specifying any particular coin or valuable security ; and such allegation, so far as regards the description of the property, shall be sustained if the offender shall be proved to have embezzled any amount, although the particular species of coin or valuable security of which such amount was composed, shall not be proved."

Similar statutes to this have since been passed in nearly all the states of our union, and of course obviate the difficulty of which we are speaking ; so that in the more recent writings on criminal law, little is said of the questions which arose under the older and more imperfect form of enactment. But our statutes do not contain this provision, and hence it is claimed by the appellant, that we are bound by the rules and decisions promulgated in England, previous to the statute of Geo. IV., as part of the common law.

To ascertain if this is correct, we must examine briefly the history of the law of embezzlement. Unlike many branches of criminal law, it is purely statutory. No part of it came down from any remote antiquity or was any part of the common law. It is made up of additions to the common law of larceny, enacted at various times in order to meet classes of criminality which arose in the changing condition of society, and were not embraced within the scope of the definitions or adjudged limits of larceny. The first of these statutes is 8 Henry VIII., chap. 7 , passed in 1517, which recites, " That before this time divers as well noblemen, as other the king's subjects, had, upon confidence and trust, delivered unto their servants, their caskets, safely to keep to the use of their said masters or mistresses, and after

such delivery the said servants had withdrawn themselves, and gone away from their said masters, or mistresses, with the said caskets, jewels, money, goods and chattels, or part thereof, to the intent to steal the same," etc., and thereupon enacts, "That if the said caskets, jewels, money, goods or chattels, that any such servant shall go away with, or which he shall imbezil, with purpose to steal it, as is aforesaid, be of the value of 40 shillings, or above, that then the same false, fraudulent and untrue act and demeanor, from thenceforth shall be deemed and adjudged felony" : 1 Hawkins, P. C., 138. The recital here shows the special occasion of the enactment and the subsequent ones were passed on like necessity. The next of these statutes enacted in 1589, provided that any one having charge "of the king's armour, ordnance, or munition," and embezzling the same, should be guilty of a felony : 31 Eliz., ch. 4. The next, passed in 1610, related to persons employed in various manufacturing occupations, who should embezzle any of the materials with which they were entrusted: 7 Jac. I., chap. 7. The next statute was directed against lodgers who "imbezilled or purloined" the furniture of their lodgings: 3 and 4 W & M., chap. 9.

Thus there were various statutes passed at considerable intervals to meet special cases, but none of a general nature until the 39 Geo. III, ch. 85, which may be said to be the first that caused embezzlement to be raised to the rank of a separate crime. The provisions of the previous statutes will be found in the older books under the head of "Simple Larceny" (Hawkins' Pleas of the Crown, p. 134).

All of the English decisions to which we have alluded as being referred to by the appellant herein as authority to show what the common-law doctrine was with regard to this crime, were under this statute of 39 Geo. III; and the language of the text books which we have quoted was based on those decisions. But the 39th year of Geo. III was long

after the date of the independence of the United States, in 1776, which is the latest period, according to the most liberal view, that the law, as held in England, was of any authority here, or composed part of that common law which became the legal heritage of the American people.   Neither the act of 1799 (39 Geo. III), nor any decisions under it, could have any binding force here, and can only be held in the same esteem with which we regard the adjudication of other foreign tribunals of weight and respectability.

In settling, therefore, what should be the practice in this territory, in cases arising under our statute relative to embezzlement, we are, fortunately, not confined by decisions and precedents which might prove far from applicable to our circumstances, or suited to our times.   It is obvious that in a case like that now under discussion it would be practically impossible ever to indict or ever to convict if it were necessary to describe specifically the money embezzled, and prove its identity on trial.   Even if the doctrine contended for had been fixed as part of the common law of England prior to 1776, it is very questionable whether, over a hundred years after, under entirely changed conditions, it would have been incumbent on us to submit to the imposition of rules which would have made the administration of justice and the punishment of crime, so far as this offense is concerned, impossible.

In laying the foundations for a future practice, on what is comparatively virgin soil, we have a right, we think, to regard the circumstances of the age and the locality to some extent, and, at any rate, to preserve sufficient independence for self-protection.   It could not be good law, we believe, to impose on a people by whom it has never before been recognized, and among whom it has no claim to authority, by usage or precedent, as common law, that which would require an impossibility as essential to the enforcement of their criminal statute.

We hold, then, that all that is to be required in cases of embezzlement, under our law, is the best description which the circumstances will permit, both in the indictment and and upon the trial.

We quote here as singularly appropriate a few words from the concluding remarks of Mr. Bishop, on this particular crime:

"As we leave this subject, let us bear in our minds that embezzlement is merely a statutory offense, not an offense at the common law, and that the statutes creating it differ somewhat in their terms. * * * Let us remember that we are now upon a branch of the law not very thoroughly considered in our books, and not as yet expanded by judicial decision to its ultimate and complete proportions * * * and that we merely respect the modern English adjudications, but do not seriously follow them. * * * The legal difficulty is to know, and state in the indictment what particular coin or bank notes are embezzled. This difficulty merely runs the question into one of pleading, and we may observe that a court departs from its duty when it does not allow some form of pleading to cover every form of offense known in the law. * * * The law of embezzlement is not so firmly fixed in the adjudications of any one of our states as to render improper a fresh examination of it by the judges, in the light of our judicial science, and in the experience of past imperfection and present necessities, as well as of actual judicial decision:" 2 Bish. Cr. Law, 366 to 370.

The judgment of the court below is affirmed.

All concur.