# Washington *v.* The State.

*Indictment against Agent, for Embezzlement.*

1. *Embezzlement, and fraudulent conversion of property, by agent; whether felony, or misdemeanor.*—An agent or servant who embezzles, or fraudulently converts to his own use, "any money or property which has come to his possession by virtue of his employment, must be punished, on conviction, as if he had stolen it" (Code, § 4377); and the larceny of an ox, or other domestic animal named in the statute, being now made a felony without regard to the value of the animal stolen (*Ib.* § 4358), the embezzlement of such animal by an agent is equally a felony without regard to value.

2. *Amending and repealing statutes.*—A statute may be amended, as well as repealed, by implication; and it is not necessary that the amending statute, in order to be free from constitutional objection, should even refer to the statute which it operates to amend.

3. *Averment of ownership, and of principal's name, in indictment.*—In an indictment for embezzlement by an agent, the name of his principal must be alleged; and it is the safer practice, also, to allege the ownership of the property, though this averment may not be necessary, and must be proved as laid.

VOL. LXXII.

[Washington v. The State.]

4. *Variance.*—Where the indictment alleges that the defendant embezzled property which came to his possession as the agent of S., while the proof shows that the property was placed in his possession by one T., who was the bailee of S., to be delivered to S., the variance is fatal, unless it is shown that S. ratified or recognized the appointment.

FROM the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

The indictment in this case charged, in a single count, that the defendant "did embezzle, or fraudulently convert to his own use, a certain ox or steer, the personal property of H. G. Stickney, which had been placed in his possession, to be by him driven or conveyed from Lowndes county to the city of Montgomery, and there by him delivered to said H. G. Stickney, and which said ox or steer was of the value of twenty-five dollars." The cause was tried on issue joined on the plea of not guilty. After conviction, the defendant moved in arrest of judgment, on account of the insufficiency of the indictment, but the motion was overruled.

On the trial, as the bill of exceptions shows, the State introduced H. G. Stickney as a witness, who testified that, within six months before the finding of the indictment, "he let one Fayette Thomas have a sorrel horse, for the purpose of trading or selling him, with the understanding, or agreement, that Thomas, in the event he disposed of the horse, was to account to him for forty-five dollars, or its equivalent;" that Thomas carried the horse to Lowndes county, and within a week or ten days afterwards, the defendant having been arrested on the charge preferred against him in this case, witness met him while under arrest, "and told him that Thomas had reported to him that he had traded the horse for a mule and two yearling steers, and had sent the steers by him (defendant) to be delivered to witness;" and that the defendant replied: "*That is all right. There are some money transactions between me and Thomas about those steers, and I sold them to get even with him.*" J. Levy, another witness for the State, testified that he bought a spotted steer from the defendant, at the price of ten dollars, "which was all it was worth;" that Thomas told him, before he paid the money, "that the steer belonged to Mr. Stickney;" and that when he informed the defendant of this, the latter replied: "*That is all right. I know what I am doing.*" The policeman in Montgomery, by whom the defendant was arrested, testified that, when informed of the cause of arrest, "defendant did not deny the charge, but said that the spotted steer had got away; and that the defendant spoke of the steers, during the conversation, as Mr. Stickney's. A witness for the defendant testified that Thomas, having the sorrel horse in his possession, came with the defendant to his house, and offered to

18

trade the horse for a mule which the witness had, and ten dollars, but witness declined the offer; that the defendant then asked Thomas if he only wanted the mule and ten dollars for his horse, and Thomas answered "yes;" that defendant then told witness, "he would trade him the horse for the mule, if witness would give him the two yearling steers in his lot," one of which was the steer charged to have been sold by the defendant. The witness said, that he "consented to this proposition, and the trade was accordingly made—the horse turned over to witness, the mule and steers delivered to defendant, who then delivered the mule to Thomas, and at the same time handed him ten dollars, which Thomas received."

"This was all the evidence in the case. The court instructed the jury, among other things, that the indictment charged the defendant with the commission of a felony; and if they found him guilty, the punishment to be inflicted must be left to the court. The court charged the jury also, on the request of the solicitor, that if they believed from the evidence, beyond a reasonable doubt, that Thomas delivered two steers to the defendant, which the defendant knew to be the property of H. G. Stickney, and to be delivered by him to said Stickney, one of them being the steer mentioned in the indictment, and that defendant agreed to deliver said steers to said Stickney, then defendant became the agent of Stickney for that purpose; and if he fraudulently sold said steer to Levy, with intent to fraudulently appropriate to himself the proceeds of said sale to his own use, and did so appropriate them, and if said sale and appropriation took place in this county, within twelve months before the finding of this indictment, then the defendant is guilty as charged."

The defendant excepted to each of these charges, and requested the following charges, which were in writing: 1. "If the authority given to Thomas was only to sell or exchange the horse in question, then Thomas had no authority to constitute the defendant as the agent of Stickney to drive the cattle to the city of Montgomery." 2. "If the jury believe the evidence, they will find the defendant not guilty." The court refused the second of these charges, but gave the first, and, on giving it, further instructed the jury, *ex mero motu*, "that in ascertaining whether Thomas had authority from Stickney to employ defendant to drive the cattle, they might look, not only at the terms, but also at the nature of the employment; and if the latter was such as to necessitate the employment of other agents, then Thomas would have the right to employ them, though not expressly authorized to do so, and might have employed the defendant to drive the cattle as the agent of Stickney, if necessary to accomplish the object of the agency." To

[Washington v. The State.]

this additional affirmative charge, and also to the refusal of the second charge, exceptions were duly reserved by the defandent.

JNO. GINDRAT WINTER, for appellant.—(1.) The indictment was fatally defective, because it did not allege the agency with sufficient certainty, and that the property came to the defendant's possession by virtue of his agency. (2). The indictment seems to have been framed on the idea, that the defendant was the agent of Stickney; while the evidence showed, if there was any agency at all, that he was the agent of Thomas. The variance was fatal. (3.) The indictment charged a felony, but the proof showed only a misdemeanor, if any offense at all. When the statute was enacted under which the indictment was found (Code, § 4377), the larceny of an ox, or other domestic animal, under $25 in value, was only a misdemeanor; and the subsequent change in that statute, making the larceny a felony without regard to the value of the animal stolen, could not effect a corresponding change in the statute against embezzlement. The amending statute had no reference to the statute against embezzlement, and can not change it by implication. The General Assembly can not accomplish by indirection what it is forbidden to do directly. The incorporation of both of these statutes in the Code of 1876, can not change their legal operation or effect.—*Dane v. McArthur*, 57 Ala. 449.

II. C. TOMPKINS, Attorney-Geneaal for the State. (1.) Embezzlement by an agent, or the fraudulent conversion of property which came to his possession by virtue of his employment, is an offense of the same grade as the larceny of the property would be.—Code, § 4377. A statute may be amended by implication, without any express reference to it. — *Riggs v. Brewer*, 64 Ala. 282; *Steele v. The State*, 61 Ala. 214. Besides, the two statutes take effect from the time of the adoption of the Code of 1876, in which both of them are incorporated. (2.) The defendant received the oxen from Thomas, but for the purpose of delivering them to Stickney. Stickney could have recovered them from him by action, or maintained an action for their loss by negligence.—*Regina v. Callahan*, 8 Car. & P. 154; 2 Wharton's Amer. Crim. Law, §§ 1912, 1953–5; Redfield on Carriers, 234; *M. & W. P. Railroad Co. v. Edwards*, 41 Ala. 667.

SOMERVILLE. J.—The indictment is for the embezzlement of an *ox*, or *steer*, which the defendant is alleged to have fraudulently converted to his own use, contrary to the provisions of section 4377 of the present Code (of 1876).

We think the court did not err in charging the jury that the

[Washington v. The State.]

offense was a felony. The *larceny* of an ox or steer, without regard to its value, is made a felony by section 4358 of the Code, punishable by imprisonment in the penitentiary, or by sentence to hard labor for the county, for not less than two, nor more than five years. And the *embezzlement* of property, under the above section, is required to be punished just as the larceny of it is.—Code, § 4377. It is, in our judgment, immaterial, that the statute against larceny has been amended, since the one against embezzlement was enacted, so as to make that a felony which before may have been only a misdemeanor. It is a plain principle, that statutes may be *amended*, as well as be repealed, *by implication;* and it is not essential that the amendatory statute should even refer to the acts or sections which they thus operate to amend, in order to be free from constitutional objection. There is no clause in our constitution prohibiting this species of legislation.—Cooley's Const. Lim. 152.

The objection to the indictment, however, is well taken. The *gist* of the crime charged is embezzlement *by an agent*, of property which has come into his possession *by virtue of his employment, or agency.*—Code, § 4377. The indictment should, therefore, have alleged that the defendant was the servant or agent of some named principal.—Code, 1876, p. 997, Form No. 50; *Watson v. State*, 70 Ala. 13; *Hinderer v. State*, 38 Ala. 415; *Lowenthal v. State*, 32 Ala. 589.

It was unnecessary, perhaps, for the indictment to have alleged the ownership of the property embezzled, as a fact separate and distinct from the necessary inference of such ownership, based on the relation of principal and agent, and on the further fact that the property had come into the agent's or servant's possession by virtue of his agency or employment. The safer practice, however, is always to aver such ownership, varying the averments in several counts so as to meet the possibilities of a variance. But, where ownership is averred in such cases, it becomes material, and must be proved.

The defendant, under the proof made, was not the agent or servant of Stickney, who was alleged in the indictment to be the owner of the property embezzled. Thomas had received the horse from Stickney, with the understanding that he was to pay him (Stickney) forty-five dollars, or *its equivalent.* Thomas traded the horse for other property, including the ox or steer in question, which latter animal was placed in defendant's custody, to be by him delivered to Stickney. The defendant was selected by, and acted for Thomas, who was, therefore, his principal. If the animal had been destroyed by the malice of the agent, or lost through his negligence, it is plain that the loss would be Thomas', not Stickney's.—*Hinderer's case*, 38 Ala. 415, *supra.* If Stickney had recognized

[Nininger v. Norwood.]

or indorsed the appointment of the defendant, he might then have been regarded as his agent. The charge of the court touching this aspect of the case was, in our opinion, erroneous.

The judgment must be reversed, and the cause remanded. In the meanwhile the defendant will be retained in custody, until discharged by due course of law.