126 P.2d 471

**WHITE v. MONTOYA.**

No. 4664.

Supreme Court of New Mexico.

June 1, 1942.

Denny & Glascock, of Gallup, and Seth & Montgomery, of Santa Fe, for appellant.

Albert O. Lebeck, of Gallup, Nils T. Kjellstrom, of Fort Wayne, Ind., and Mechem & Hannett, of Albuquerque, for appellee.

BRICE, Chief Justice.

The appellee instituted this suit to recover damages for the death of his intestate, a

youth of fifteen years, caused by a collision with appellant's truck. At the time of the accident the appellant was operating his own truck as a common carrier under a certificate of convenience and necessity issued by the New Mexico Corporation Commission. The suit was brought under sections 36-102 and 36-104, Sts.1929, parts of which, material here, are as follows:

"Whenever the death of a person shall be caused by the wrongful act, neglect or default of another, although such death shall have been caused under such circumstances as amount in law to a felony, and the act, or neglect, or default, is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person, who or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured." Sec. 36-102.

"Every such action as mentioned in section 1821 (36-102) shall be brought by and in the name or names of the personal representative or representatives of such deceased person, and the jury in every such action may give such damages, compensatory and exemplary, as they shall deem fair and just, taking into consideration the pecuniary injury or injuries resulting from such death to the surviving party or parties entitled to the judgment, or any interest therein, recovered in such action, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default. * * *" Sec. 36-104.

The appellant's contention is that under the facts the appellee could not maintain this suit; that the remedy was a suit by the father and mother of the appellee's intestate in their individual capacities, under the death statute applicable to common carriers (Sec. 36-101, Sts.1929), the parts material to this issue being as follows: "Whenever any person shall die from any injury resulting from, or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car, or train of cars, or of any driver of any stage coach or other public conveyance, while in charge of the same as driver; * * * the corporation, individual or individuals, in whose employ any such officer, agent, servant, employee, engineer or driver, shall be at the time such injury was committed, * * * shall forfeit and pay for every person or passenger so dying, the sum of Seven Thousand Five Hundred Dollars, which may be sued and recovered; first, by the husband or wife of the deceased; or second, if there be no husband or wife, or if he or she fails to sue within six months after such death, then by the minor child or children of the deceased; or third, if such deceased be a minor and unmarried, then by the father and mother; * * *." Sec. 36-101, as amended by Ch. 19, L.1931.

The appellant asserts that as he was a common carrier, this suit should have been instituted under Sec. 36-101, notwithstanding he was driving his own car; whereas appellee contends that Sec. 36-101 has refer-

ence to injuries resulting from accidents occasioned by the negligence, etc., of officers, agents, servants and employees only, and not to injuries caused by the negligence of the driver-owner of a "public conveyance."

In support of appellee's contention, he cites the fact that these statutes were adopted sixty years ago from the State of Missouri and that the Missouri courts had so construed them before, and since, their adoption by New Mexico. This seems to have been the construction of the statutes by the Supreme Court of Missouri in Schultz v. Pacific Ry. Co., 1865, 36 Mo. 13, from which we quote:

"But the negligence, unskillfulness or criminal intent for which the employer is to be held liable in this manner, is expressly confined to some officer, agent, servant or employee, whilst running, conducting or managing a locomotive, car, or train of cars; and, of course, this part of the act can be applied to the negligence, unskillfulness or criminal intent of no other persons and to no other state of facts.

"The framer of the act evidently undertook to carry two distinct propositions, concerning two classes of persons, and relating to two different and distinct grounds of liability, through one lengthy period; and, as he proceeded, found it necessary to infold and involve them in an alternate series of expressions, which are applicable separately to each in their order, at some expense of rhetorical clearness and precision, but winding up with one and the same con-

clusion as to both, the prescribed penalty of five thousand dollars damages. Consequently, when the liability of the employer is declared in reference to the first clause, it is the corporation or individual 'in whose employ any such officer, agent, servant or employee,' shall be at the time the injury is committed, that is to be liable, and plainly in respect of the negligence, unskillfulness or criminal intent of such officer, agent, servant or employee, whilst running, conducting, or managing the engines, cars, or trains; but when the other clause relating to passengers only, becomes the subject of the sentence, it is the corporation or individual who owns the railroad, locomotive, car, or train, in which the defect or insufficiency which is then the ground of the liability, may exist, that is declared to be liable."

In Casey v. St. Louis Transit Co., 205 Mo. 721, 103 S.W. 1146, 1147, the Missouri court stated: "The right of action given in section 2864 [Mo.R.S.A. § 3652] is for a death caused by the negligence of the servant operating the defendant's instrument of transportation, whether it be a locomotive, car, train of cars, steamboat, its machinery, stagecoach, or other public conveyance, while the right of action given in the two sections next following is for a death caused by the negligence of the defendant, which may mean his own negligence, as, for instance, in furnishing an unsafe vehicle, or it may mean his negligence through his servant in some particular other than the particular specified in section 2864, for

which, if the person injured had not died, he would have had a right of action."

And in Wallace v. Woods, 340 Mo. 452, 102 S.W.2d 91, 95, that court, in construing the statute as amended, held that the owner of a public conveyance, who is also the driver, is liable under it, but regarding the original statute, stated: "It is no doubt true that as originally enacted section 3262 [Mo. R.S.A. § 3652] created no cause of action for a penalty for wrongful death against the owner of an instrumentality of public transportation for his own negligence, except for a defect or insufficiency therein causing a passenger's death; and that (as defendant contends) it created a cause of action for the death of a person caused by the negligent operation of such instrumentalities only when it resulted from the negligence of an agent or employee in the owner's employ."

▮ It is a general rule based upon a presumed intent, that the adoption of a statute from another state includes its prior construction by the courts of that state, Marlin v. Lewallen, 276 U.S. 58, 48 S.Ct. 248, 72 L.Ed 467, and the presumption is strong that the legislature did so intend. McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250. While the rule is not absolute, Beals v. Ares, 25 N.M. 459, 185 P. 780; Armijo v. Armijo, 4 Gildersleeve 57, 4 N.M. 57, 13 P. 92; Phoenix Title & Trust Co. v. Old Dominion Co., 31 Ariz. 324, 253 P. 435, 59 A.L.R. 625; McDonald v. Lambert, supra, it should be followed unless the strong presumption is overthrown by

stronger reasons or evidence that it was not adopted. To overthrow the presumption the appellant states: "We think it may be safely stated that during the nearly sixty years since the original enactment of Section 36-101, the bar generally has regarded it as applicable to all public conveyances, whether they happen to be operated or driven by the owners or not, Sanchez v. Contract Trucking Co., supra. This court has also treated the section as applicable to owner-operators;" and cites Sanchez v. Contract Trucking Co., 45 N.M. 506, 117 P.2d 815, and Ickes v. Brimhall, 42 N.M. 412, 79 P.2d 942, as supporting authorities.

In construing the original Missouri statute in Higgins v. St. Louis & S. R. Co., 197 Mo. 300, 95 S.W. 863, 865, the Supreme Court of Missouri said: "That our bench and bar has proceeded upon the theory that this statute applied to street railways, is evidenced by the number of cases brought and determined without the question being raised, which, to say the least, is very persuasive authority of the construction to be given to this statute."

But the statement of the Missouri court that such had been the construction of the bench and bar of that state for many years was established by the decisions of the Supreme Court of that state.

We held in the Ickes case that a statutory right of action against a common carrier under Sec. 36-101 did not survive the wrongdoer, who was an owner-driver of a car operating as a common carrier. Appellant argues that if there was no cause of action

under this section because the carrier was driving his own car, that this would have determined the case without the necessity of passing upon whether the cause of action survived. But the question here was not before the court and consequently could not have been decided. It is true the attorneys for the appellee in that case construed the statute as applying to all common carriers, or at least it would so appear, but this falls far short of a construction by the bar of the state generally.

The question in the Sanchez case was whether Sec. 36-101 applied to automobiles used for transportation purposes by a common carrier, something that did not exist at the time the statute was enacted. We held that it did so apply, and that the suit was not properly brought under Sec. 36-101 by the administratrix of the deceased's estate. The question here was not before the court, but Higgins v. St. Louis & S. R. Co., supra, was quoted from with approval, as follows: " 'To our mind the purpose of this statute was to allow damages for the negligent acts of the servants managing, running, and controlling public conveyances.' " [45 N.M. 506, 117 P.2d 817.]

Appellant supports his theory by a quotation from Wallace v. Wood, supra. It would serve no useful purpose to comment at length upon that case. It is enough to say it was held that before amendments the statute created no cause of action for a penalty for wrongful death against the owner of an instrumentality of public transportation for his own negligence, except for a defect or insufficiency, etc, as provided by the statute. It was solely by reason of the amendments that the Missouri court held that the statute applied to public carriers who drive their own transportation instrumentalities.

It is suggested by appellant that absurd results will follow if the view of the district court prevails. That corporate common carriers, who must operate by agents, will come under Sec. 36-101, but partnerships or individuals operating their own automobiles are classed under Sec. 36-102. That if the owner who ordinarily operates his own automobile should employ a driver temporarily, he operates under Sec. 36-101, otherwise under 36-102. This is merely an argument that the legislature should have included all common carriers under Sec. 36-101. Should we agree with appellant—and his argument has some basis—nevertheless it was a legislative matter and we are not authorized to add to the statute by such construction, unless we can determine that it was the legislative intent that all common carriers should come under that section, and we are not prepared to say that the legislature did so intend.

Some suggestion is made, though not contended for, that if the district court's construction of the statute should prevail it raises serious doubts as to its constitutionality, in that it denies to appellant the equal protection of the laws. That question is not presented and is therefore not decided; but, as appellant suggests, the power of the legislature to classify is broad; and it may

246

be that there is some sound reason why one driving his automobile as a common carrier should be classed under Sec. 36-102 with other owners who drive their own cars.

■ The general death statute (Sec. 36-102), standing alone, would cover áll deaths resulting from the negligence of individuals or corporations. Sec. 36-101 is necessarily an exception, and we do not find that this case comes within the exception for the reasons stated.

Appellant does not question the conclusion of the trial court that appellant's negligence was a proximate cause of the injury and death of appellee's intestate, but asserts that the negligence of the latter contributed thereto. He states in his brief:

"It seems to us too plain to require argument that plaintiff's intestate was guilty of contributory negligence, in that he 'drove the motorcycle from his right hand side of the road over onto his left hand side of the road, there striking the automobile truck' of defendant, as alleged in defendant's answer. The undisputed evidence shows this from the location of the point of impact of the collision north of the center line of Maloney Avenue. This is in effect found by the court in his finding number 8, locating the point of impact north of said center line (transcript page 41).

"The district court attempted to avoid this, by including in said finding the following, that deceased 'upon being confronted by said truck' swerved the motorcycle 'to the left'; and by including in finding No. 9

'that the deceased, upon being confronted by said Chevrolet truck, was unable to avoid striking same.'

\* \* \* \* \*

"The excuse of deceased's contributory negligence included in these findings is, therefore, a mere assumption, without any evidence in its support, and the finding that deceased was on the wrong side of Maloney Avenue at the time of the collision convicts deceased of contributory negligence.

"The deceased could not have been impaled on the handle of the door of the truck unless he was travelling in a direction substantially parallel with that in which the truck was travelling. The handle pointed forward on the truck, was parallel with and about an inch distant from the side of the truck. This would indicate that there was no swerving to the left to avoid the truck— rather that deceased was turning to the right into Second Street."

Appellant's negligence consisted in the violation of the following state laws:

"(a) Except as otherwise provided in this section, the driver of a vehicle \* \* \* when intending to turn to the left shall approach such intersection in the lane for traffic to the right of and nearest to the center line of the highway and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning such vehicle to the left.

"For the purpose of this section, the center of the intersection shall mean the meet-

ing point of the medial lines of the highways intersecting one another." Sec. 11-816, N. M.Sts. 1929.

"(a) The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety * * *." Sec. 11-817, N.M.Sts.1929.

The appellant at the time was operating a Chevrolet truck, going north on Second Street in the town of Gallup, New Mexico. Upon arriving at Maloney Avenue he entered the intersection without first determining that the intersection of Maloney Avenue and Second Street was clear of all traffic approaching from either direction, and turned westward, intending to go west on Maloney Avenue, before he reached the center point of the intersection of the two streets, cutting diagonally across the intersection to the north side of Maloney Avenue. The avenue was thirty-six feet in width and the truck eighteen feet in length, so that at one instant when the truck was making the turn mentioned the south side of Maloney Avenue was completely blocked by it. The motorcycle upon which the deceased and another were riding, going east on the south side of Maloney Avenue, was confronted by the truck when it was driven into the intersection of the streets.

Findings 8, 9 and 10 of the court are as follows:

"That the motorcycle operated by the deceased, approaching from the west, upon being confronted by said truck was swerved to the left, and struck the truck on the left side of the same back of the front fender and about the left door of the cab, the point of impact being north of the center line of Maloney Avenue, and west of the center point of the intersection of Maloney Avenue and Second Street.

"That the defendant, upon entering said intersection, was travelling between 5 and 10 miles per hours, and that the deceased, upon being confronted by said Chevrolet truck, was unable to avoid striking the same.

"That on the southwest corner of the intersection of Maloney Avenue and Second Street there is a one-story building, and that the stop sign placed upon Second Street at the intersection with Maloney Avenue is some 3 to 6 inches back of the line of said building extended eastward. That there were parked at the curb, on the south side of Maloney Avenue and west of the intersection, two or three automobiles, and at the place where the stop sign was located the view of a person approaching Maloney Avenue, and looking westward on the same, was somewhat obstructed until the car was moved some few feet forward toward said Maloney Avenue.

The court concluded:

"1. That the defendant was guilty of negligence in entering Maloney Avenue, without first determining that the intersection was clear of all approaching traffic.

"2. That the defendant was negligent in turning left from Second Street on to Maloney Avenue, without going around the center of said intersection.

"3. That the negligence of the defendant was the proximate cause of the accident, and of the death of the deceased.

"4. That the plaintiff is entitled to recover from the defendant damages in the amount of $7500.00."

There is substantial evidence to establish that the deceased was travelling on the south side of Maloney Avenue, going east, intending to cross Second Street. His destination lay straight ahead. He was about 20 feet from the intersection of Second and Maloney Avenue when his attention was called to the truck by his companion, who testified: "Well we was riding along around 20 miles per hour, coming to this corner, and saw the head of the truck starting to come across the road, and I told Barney to watch out, and he threw on the brakes and we must have slid into the truck. It was raining, and we slid into the truck, and hit the truck, I would say, I don't know where we hit it, but when I come to it was just about the middle of the road."

The inference from this testimony is either that "slamming on" the brakes threw the motorcycle to the left because of the slippery street, or else the deceased attempted to turn with the truck to avoid the impact. It is therefore immaterial that the impact occurred across the center of Maloney Avenue. It does not follow that he had been travelling on the left side of the street.

There would have been no occasion for the sudden pressing of brakes if deceased had not been immediately confronted with the truck. The testimony of his companion indicates that he attempted to avoid a collision by quick action.

The appellant argues that since deceased was impaled on the handle of the truck door, which pointed to the front, he must have been moving in the opposite direction to the course of the truck. The impact itself against the moving truck might have caused his impaling upon its door handle. We do not think it impossible for deceased to have been so injured by being thrown against the side of the moving truck. The fact that the collision occurred north of the center of Maloney Avenue does not necessarily establish that deceased was travelling on that side of the street.

Proximate cause is an ultimate fact, and is usually an inference to be drawn by the court or jury trying the case from the facts proved, and only becomes a question of law when the facts regarding causation are undisputed and all reasonable inferences that can be drawn therefrom are plain, consistent and uncontradictory. Greenfield v. Bruskas, 41 N.M. 346, 68 P.2d 921.

We are unable to say, as a matter of law, that deceased's own negligence was a proximate cause of his injury and death.

The judgment of the district court should be affirmed, and it is so ordered.

ZINN, SADLER, MABRY, and BICKLEY, JJ., concur.