251 P.2d 274

**NATSEWAY et al. v. JOJOLA et ux.**

**No. 5542.**

Supreme Court of New Mexico.

Dec. 10, 1952.

Dissenting Opinion Dec. 26, 1952.

Rehearing Denied Dec. 31, 1952.

W. T. O'Sullivan, Albuquerque, for appellants.

Rodey, Dickason, Sloan, Mims & Akin, Albuquerque, for appellees.

SADLER, Justice.

The question for decision is whether the cause of action mentioned in 1941 Comp. Sec. 24–102, of our death by wrongful act statute as being barred within one year from date of its accrual arises upon infliction of the injury later resulting in death or comes into being at death.

The present action was filed in the district court of Bernalillo County on October 22, 1951, by Joseph G. Natseway and Lupita Natseway, his wife, as joint administrators of Raymond Natseway, deceased, against Charles Jojola and Juanita Jojola, husband and wife, seeking damages in the sum of $15,000 for the death of plaintiffs' minor son, 9 years of age, who resided with them at their home on the Isleta Pueblo in Bernalillo County, New Mexico.

The complaint sets forth as the "wrongful act, neglect or default" of which the defendants were claimed to be guilty the purchase and gift to their minor son, 12 years of age, as a Christmas present, a 22 caliber rifle which he discharged indiscriminately and carelessly in the neighborhood of the homes of plaintiffs and defendants, inflicting a fatal wound on plaintiffs' son on December 28, 1949, from which he died on March 28, 1951. The complaint further disclosed by way of allegation that the injured boy was hospitalized and under the treatment of doctors, surgeons and nurses in an effort "to cure or leviate his wound or wounds," as a result whereof the plaintiffs paid out and incurred expenses of about $3,000, to their total damage in the sum of $15,000 for which they prayed judgment.

The record in this case presents us with a state of facts which it is difficult to understand. The complaint discloses a wound inflicted upon plaintiffs' intestate on December 28, 1949, by the discharge of a 22 caliber rifle held in the hands of the minor son of defendants. The allegations of the complaint further disclose that the injured boy survived the injury and died therefrom on March 28, 1951. The complaint was filed on October 22, 1951, well within one year following death.

The defendants filed two motions to dismiss, the first one on October 22, 1951, as-

serting the complaint to be bad because "it appears from the face thereof that it fails to state a claim upon which relief can be granted." Another entitled "First Amended Motion to Dismiss" was filed May 7, 1952, in which defendants seek a dismissal for the stated reason "that said complaint was filed more than one year after death of plaintiffs' intestate, and that the cause of action is, therefore, barred by virtue of the provisions of Sec. 24–102, N.M.S.A. (1941)."

The court heard argument on defendants' first amended motion to dismiss and entered the following order, omitting formal parts, to-wit:

"Finds that the complaint herein filed more than one year after the death of plaintiffs' intestate, the cause of action is, therefore, barred by virtue of the provisions of Section 24–102, N.M.S.A. (1941);

"It is therefore ordered that the complaint of plaintiffs be and the same hereby is dismissed with prejudice."

Notwithstanding the confusion thus arising on the fact that defendants' amended motion to dismiss because the complaint was filed more than one year from death of decedent and appears on its face to have been argued on that basis, as well as to have been decided upon that ground, in a highly commendable effort to have this case decided upon the real issue of law involved, being the ground which he states it was argued below, plaintiffs' counsel asks us to read the amended motion as if it sought dismissal "for the reason that * * * the cause of action is * * * barred by the provisions of Section 24–102, N.M.S.A. (1941)." He points out that the complaint was filed well within one year from the date of the death of decedent and that, if determined upon the ground set forth in the motion, a reversal would be almost automatic.

Thus it is that counsel for plaintiffs guides us quickly to the real question involved on this appeal and asks us to determine it. That question is stated in the opening paragraph of this opinion, namely, whether the cause of action asserted is barred under the provisions of 1941 Comp. Sec. 24–102, because not filed within one year from the *accrual* of the cause of action, treating the time of injury as date of accrual. If we are correct in the conclusion we have reached that it is barred under prior decisions of this Court, then regardless of the erroneous grounds advanced for dismissal in the amended motion to dismiss and of the fact that the trial court's order sustaining said motion falls into the same error, we should have been compelled to notice the error and misapprehension as fundamental and to announce the result we hereinafter declare.

The complaint seeks recovery under the provisions of 1941 Comp. Sec. 24–101, reading as follows:

"Whenever the death of a person shall be caused by the wrongful act, neglect or default of another, although such death shall have been caused under such circumstances as amount in law to a felony, and the act, or neglect, or default, is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured."

The same act which created the right conferred by the preceding section, L. 1882, c. 61, also carried a limitation in section 9 thereof, reading as follows and now found as 1941 Comp. Sec. 24–102, to-wit:

"Every action instituted by virtue of the provisions of this and the preceding section must be brought within one (1) year after the cause of action shall have accrued."

We have in two earlier decisions by this Court held this to be a survival statute. Hogsett v. Hanna, 41 N.M. 22, 63 P.2d 540, and State ex rel. De Moss v. District Court, 55 N.M. 135, 227 P.2d 937, 938. In other words we held in Hogsett v. Hanna, supra, that the intervention of death following the injury which caused it creates no new cause of action in favor of the beneficiaries. And in the De Moss case, although the complaint was filed within one year from death of decedent, yet more than one year after infliction of the injury causing it, we held that "not only the remedy but the right to maintain the suit was barred at the time the complaint was filed."

Under the authority of the two decisions mentioned it would seem to follow as night the day that the cause of action in plaintiffs for the injuries to and death of the intestate, their son, was barred unless some good reason differentiating this case from the Hogsett and De Moss cases can be pointed out. The plaintiffs' counsel thinks he finds that distinction in the fact of the infancy of plaintiffs' intestate, a matter we shall next consider.

We thus observe that counsel for plaintiffs ingeniously assails the position of defendants with a two-edged sword, to speak figuratively. First, he advances the proposition that the cause of action asserted by plaintiffs did not arise until death of their intestate. In presenting this claim they are blocked at the very start by the two prior decisions of this Court in Hogsett v. Hanna, supra, and in the De Moss case. Seeking, then, to detour this road block of precedent

barring their path, they sieze upon the fact of the intestate's infancy to afford them safe passage around it. In so doing they again meet with obstacles by way of precedent, reason and logic just as difficult to surmount.

The argument is that if the intestate had been an adult our decisions in Hogsett v. Hanna, supra, and the De Moss case holding 1941 Comp. Sec. 24–101 to be a "survival" statute and the cause of action to arise upon commission of the tort would serve as an absolute bar to prosecution of the suit. The intestate being a minor, however, changes the situation and those decisions cannot control, says counsel for plaintiffs. He argues that the infancy of the intestate brings the case under the saving clause for infants found in the statutes on general limitations as 1941 Comp. Sec. 27–109, reading as follows:

"The times limited for the bringing of actions by the preceding provisions of this chapter shall, in favor of minors and persons insane or under any legal disability, be extended so that they shall have one (1) year from and after the termination of such disability within which to commence said actions."

■ Two complete answers to this contention confront the plaintiffs. In the first place, the statute under which they claim creates a new right and in the very act creating it limits the time within which it may be prosecuted. It was thus a limitation, not on the remedy alone, but on the right itself. See State ex rel. De Moss v. District Court, supra, where speaking of the nature of the statute, we said:

"It is clear that not only the remedy but the right to maintain the suit was barred at the time the complaint was filed."

See, also, 16 A.J. 114, Sec. 168 under "Death"; Taylor v. American Employers' Insurance Co., 35 N.M. 544, 3 P.2d 76; Foster v. Yazoo & Miss. Valley R. Co., 72 Miss. 886, 18 So. 380; Blaser v. Osage River Gravel Co., Mo.Sup., 219 S.W. 585.

■ Still other considerations remove this case from an application of the statute providing a saving clause in behalf of infants, cited above as 1941 Comp. Sec. 27–109. Under the express language of the saving clause, it is limited in its application to actions described in the preceding sections of the act of which the death by wrongful act is not one. Furthermore, 1941 Comp. Sec. 27–116, L.1880, c. 5, Sec. 16, plainly removes the saving clause from application here. It reads:

"None of the provisions of this chapter shall apply to any action or suit which, by any particular statute of this state, is limited to be commenced within a different time, nor shall this chapter be construed to repeal any existing statute of the state which provides a limita-

tion of any action; but in such cases the limitation shall be as provided by such statutes."

There is no saving clause in the limitation provision of the death by wrongful act statute and the courts cannot provide a saving clause or create an exception where the statute contains none. 16 A.J. 114, Sec. 169 under "Death"; 25 C.J.S., Death, § 53(b), page 1158. See, also Field v. Turner, 56 N.M. 31, 239 P.2d 723.

The facts of the present case are not unlike those present in our former decision in Vukovich v. St. Louis, Rocky Mountain & Pacific Co., 40 N.M. 374, 60 P.2d 356, 357, in many respects. We were construing certain provisions of our Workmen's Compensation Law, cited as 1929 Comp., Sec. 156–101 et seq. and we held that where an employee died on June 1, 1932, from injuries sustained on July 27, 1931, which rendered him totally disabled until date of death, claim filed on April 1, 1933, was too late, since claim must be filed within one year of date of injury. The controlling statute provided that in the event a compensable injury should be the proximate cause of an employee's death claim therefor, under the conditions named, could be filed on behalf of the beneficiaries, adding:

"Provided, that no claim shall be filed or suit brought to recover such compensation unless claim therefor be filed within one year after the date of such injury." 1929 Comp. § 156–116. (Emphasis ours.)

It was argued that the word "injury" might have two meanings referring (1) either to the physical injury or bodily hurt, or (2) connote the legal injury suffered by those in whose favor the cause of action arises by reason of the compensable death of an employee; that as used in fixing the limitation at one year "from the date of such injury" it must have been employed with the latter intendment, since until that event no right of action exists in the dependents. Carrying claimant's argument a step further, the opinion states:

"Hence, the word 'injury' where last used in this section means 'death,' or includes death, and, claim having been filed within one year after death, is timely."

We were compelled to hold that under the plain and unambiguous language of the statute the filing of the claim one year after death was not timely. In other words, it should have been filed one year from the date of the injury just as in this case. We added an observation there which is pertinent here as to any hardship that might result from such holding, to-wit:

"It is urged that to declare the statute as having this meaning may result in great hardship in particular cases, * * *.

"* * * But the fact that hardship may result can furnish no warrant for the courts to supply what the Legislature has omitted or to omit what it has inserted. Martini v. Kemmerer Coal Co., supra [38 Wyo. 172, 265 P. 707]; Chmielewska v. Butte & Superior Mining Co., supra [81 Mont. 36, 261 P. 616]. 'What the Legislature intends is to be determined, primarily, by what it says in the act. It is only in cases of ambiguity that resort may be had to construction. Courts cannot read into an act something that is not within the manifest intention of the Legislature, as gathered from the statute itself. To do so would be to legislate, and not to interpret. There is no ambiguity in this statute, and it neither requires nor admits of construction.' De Graftenreid v. Strong, 28 N.M. 91, 206 P. 694, 695."

The same thought was in our minds in State ex rel. De Moss v. District Court, supra, when we answered the contention that we should overrule our former decisions to put us in line with the present decisions of the Supreme Court of Missouri whose overruled decisions we initially followed on the theory of adopted construction in holding the questioned statute created no new cause of action in the beneficiaries on the death of the injured party. We there said:

"Our decision in that case was three years after the Cummins case, supra,

and we there followed the Missouri cases decided prior to our adoption of their statute. *We feel any change in the rule should be made by the legislature and not by us.*" (Emphasis added.)

In his reply brief the plaintiffs' counsel advances a novel proposition not theretofore suggested. It is as follows:

"The rule announced in the Hogsett and De Moss cases establishes that our legislature in 1882 enacted a so-called 'survival statute,' but such enactment was without effect upon the fact that the legislature in 1876 had already adopted 'Lord Campbell's Act' as part of the British common law."

We fail to see the merit in this contention. It is contrary to the rationale of our holdings in Hogsett v. Hanna, supra, and State ex rel. De Moss v. District Court, supra. See, also, Ickes v. Brimhall, 42 N.M. 412, 79 P.2d 942. Indeed, counsel in urging it upon us virtually concedes that our Death by Wrongful Act Statute, 1941 Comp.Sec. 24–101, *is the Lord Campbell Act,* calling the similarity in language and provisions "amazing," yet seeing in this fact a "mere coincidence" in view of our holding in the Hogsett and De Moss cases that it is a "survival" statute.

It seems not to have occurred to counsel that in adopting the Missouri statute, both Missouri and New Mexico may have been

taking so much of the Lord Campbell Act as was deemed appropriate to their respective conditions, changing the limitation period, however, from a year after death to a year "after the cause of action shall have accrued." If our statute is patterned after the Lord Campbell Act, with limitations one of the differences, it would be truly anomalous to have restored to it as a part of the common law what the legislatures of Missouri and New Mexico in adopting so much of the Lord Campbell Act as desired had purposely modified by changing the limitations.

Should the foregoing observations be deemed insufficient to answer the contention thus made by counsel, it affords a complete answer to point out that Lord Campbell's Act could not properly be held to come to us as a part of the common law for another controlling reason. It is a statute enacted by parliament in 1846, long subsequent to the separation of the colonies from the mother country. Territory v. Maxwell, 2 N.M. 250; Browning v. Browning, 3 N.M., Gild., 659, 9 P. 677; Territory v. Hale, 13 N.M. 181, 81 P. 583.

In closing we should mention the fact that the inaccuracy in synopsis and in the first two paragraphs of headnotes to De Moss case in mentioning "death," instead of commission of tort, as date from which limitations run has been noticed and corrected in all subsequent printings of the opinion in the De Moss case. See Vol. 3, New Mexico Digest, Cumulative Annual Pocket Part. We accept our share of responsibility for overlooking the error when, as trustees for the State Library, we failed to catch it in approving the headnotes to this case. The decision of this Court in the De Moss case holds, in line with our earlier decision in Hogsett v. Hanna, supra, that the Death by Wrongful Act Statute, 1941 Comp. § 24–101, is a "survival" statute; that, consequently, the cause of action arises when the tort is committed, thus barring an action therefor at the end of one year thereafter.

It follows from what has been said that the district court was correct in sustaining the motion to dismiss even if it did give a wrong reason for doing so. Lockhart v. Wills, 9 N.M. 344, 54 P. 344. Hence, the order reviewed will be affirmed.

McGHEE and COMPTON, JJ., concur.

LUJAN, C. J., not participating.

COORS, Justice (dissenting).

I am unable to concur in the foregoing opinion of the Court, holding that the cause of action for wrongful death is barred within one year from the date of the infliction of the injury rather than within one year from the date of the wrongful death.

A rather exhaustive examination of the authorities discloses that in states having wrongful death statutes similar to ours the courts have almost unanimously held that the cause of action does not exist or come into being until death. I believe that the opinion of this Court is not only fundamentally and clearly erroneous but is unreasonable, illogical and unjust and clearly opposed to almost all modern decisions and text writers passing upon the question.

Apparently the sole support for the foregoing opinion on said question is precedent and a careful examination of such precedent, which is the opinion rendered by this Court in 1936 in the case of Hogsett v. Hanna, 41 N.M. 22, 63 P.2d 540, 542, discloses that the precedent is not worthy of being followed for the ruling apparently announced by the Court in the Hogsett v. Hanna case was pure dicta, wholly immaterial and unnecessary to determine the issues involved in that case. Not only was it dicta but it was erroneous dicta, as is later shown herein. To determine the issues in the Hogsett v. Hanna case it was wholly immaterial whether the statute was one of revival or one creating a new cause of action.

The three Missouri cases cited and quoted as authority for such ruling that the wrongful death statute was a statute of survival rather than a statute creating a new cause of action were overruled by the Supreme Court of Missouri as clearly wrong ten years prior to the decision in the Hogsett case. An examination of the original transcript and the briefs filed in the case of Hogsett v. Hanna, supra, discloses that there was no issue raised in the trial court nor in this court on appeal by any of the parties in any way asking, seeking or making it material for this Court to determine whether the wrongful death statute in New Mexico was a statute of survival or a statute creating a new cause of action.

Point III made by the defendant Hanna was, that under the New Mexico wrongful death statute a master cannot be held liable for wrongful death caused by the tort of his servant. In that case Hanna was being sued for the wrongful death of Dr. Hogsett caused by the tort of Hanna's servant. Hanna pointed out that the section of the statute relating to the cause of action for wrongful death against common carriers, 24–104, N.M. Statutes 1941, Annotated, had different phraseology from the other section of the statute dealing with causes of action against other persons (not common carriers) for wrongful death, 24–101, N.M. Statutes 1941, Annotated; that the section relating to common carriers specifically made the common carriers liable for wrongful death by the negligence of an officer, agent, servant or employee, while the section dealing with the cause of action for

wrongful death generally only spoke of "the unlawful act, neglect or default of another" without specifically mentioning agents, servants or employees. Hanna contended that this difference in the wording of the two sections of the statute showed that under the general section (not relating to common carriers) a defendant could be held liable for the death of another caused only by his own personal wrongful act, neglect or default and could not be held liable for a wrongful act, neglect or default of his servant or agent; that this difference in the two sections of the statute showed a clear intention of the Legislature to place no liability on the master for the negligence of his servant or agent and was an implied repeal of the well established doctrine of respondeat superior with reference to the law of master and servant and principal and agent in any action for wrongful death.

The plaintiff, administrator of Hogsett, denied the contention of Hanna and asserted that the statute creating liability for wrongful death caused by the wrongful act, neglect or default of another did not repeal our well established law regarding master and servant and, particularly, that doctrine known as respondeat superior; that such doctrine was recognized by the common law and was and had been continuously recognized as the law in New Mexico, and that the statute making a person liable for wrongful death caused by his wrongful act did, by virtue of the rule of respondeat superior, make such person liable for his negligence whether commited personally or by his agent or servant when acting within the scope of his employment or authority. Neither of the parties to such action in any wise contended that the decision upon that point depended in any way upon the question of whether or not the statute was one of survival or one creating a new cause of action.

The Court, however, in considering that case, wandered far afield and improperly inserted dicta which was largely approvingly quoted from three cases of the Supreme Court of Missouri. Our Court said:

"The defendant maintains that the trial court erred in ruling that an individual master was liable for the wrongful death caused by the tort of his servant, * * *.

"Our statute was originally passed as chapter 61 of the Laws of 1882 and was taken from the statutes of Missouri. Prior to the enactment of this statute by our Territorial Legislature, the case of Proctor v. Hannibal & St. J. Railway Company, 64 Mo. 112, had been decided by the court of last resort of that state. * * *"

Our Court then quoted briefly from Proctor v. Hannibal, supra, and also quoted from the opinions in two later cases from Missouri which were decided in 1889 and 1891,

subsequent to the time we adopted the statute commonly known as the wrongful death statute. All three of these Missouri cases quoted from in such opinion held that the Missouri wrongful death act was a statute of survival and did not create a new cause of action, but none of them involved the doctrine of respondeat superior. Only the first Missouri case quoted, Proctor v. Hannibal, supra, was decided prior to the passage of our wrongful death act and a reading of that case discloses that it did not expressly overrule the preceding decisions of the Supreme Court of Missouri which held the exact opposite.

The Proctor case was decided in 1876 while, just a year previous thereto, the Missouri Supreme Court in the case of Entwhistle v. Feighner, 60 Mo. 214, said:

"* * * When the husband was killed, then it was for the first time that the cause of action accrued to the plaintiff as his widow. Had the husband survived, this action never could have been brought. It is an action in which plaintiff and defendant only could be parties, for it did not arise till after the husband's death. * * *"

A similar ruling was made by the Supreme Court of Missouri as early as 1865 in the case of Kennedy v. Burrier, 36 Mo. 128, wherein it is said:

"The sixth section of the act provides that suit must be brought 'within one year from the time the cause of action accrued.' When, then, did the cause of action accrue? We think the cause of action accrued whenever the defendant's liability became perfect and complete. Whenever the defendant had done an act which made him liable in damages, and there was a person *in esse* to whom the damages ought to be paid and who might sue for and recover the same, then clearly the cause of action had accrued as against him. When, then, did this liability take place? Evidently at the death of Kennedy. * * *"

It is rather odd to find that the opinion in the said case of Proctor v. Hannibal, supra, written by a new judge of the court, failed to even mention or cite the two decisions of the same court which had decided the question exactly opposite to the decision in Proctor v. Hannibal which clearly overruled the rule announced in the two previous decisions.

In 1926, in State ex rel. Thomas v. Daues, 314 Mo. 13, 283 S.W. 51, 45 A.L.R. 1466, ten years prior to the decision of our own Court in the case of Hogsett v. Hanna, supra, the Supreme Court of Missouri specifically overruled the decision rendered by that Court in the case of Proctor v. Hannibal, supra, and specifically approved and quoted the rule laid down in the Missouri case of Entwhistle v. Feighner, supra, as follows:

"When the husband was killed, then it was for the first time that the cause of action accrued to the plaintiff as his widow. Had the husband survived, this action never could have been brought. It is an action in which the plaintiff and defendant only could be parties, for it did not arise till after the husband's death. * * *" "We are thoroughly convinced that Wagner, J., was right, when in Entwhistle v. Feighner, supra, he said: * * *"

The opinion then repeats the statement of the rule just above quoted and proceeds in the following language:

"The very purpose of the Damage Act of 1855 was to give a cause of action where none existed at common law. It did not revive a cause of action theretofore belonging to the deceased, but it gave a new cause of action to named parties bearing relationship to the deceased. Take the instant case. Mrs. Thomas had a cause of action so long as there was breath in her body for damages for her negligent injury, but that is not the cause of action which her husband has by reason of the Damage Act. His cause of action is a penalty inflicted by statute for her death. Of course, her death had to be caused by the negligence of defendant before there was liability upon the part of the defendant. Ab-

sent death, her cause of action was damage to herself. With her death (absent a settlement of her cause of action) then sprang up for the first time (under the Damage Act) a cause of action in her husband. There was no survival of her cause of action (because that was merely for damages suffered by her), but there was a new and different cause of action (by virtue of the Damage Act) given to the husband. The negligence of the defendant was incidental and a factor in both, but this fact does not change the situation. Her cause of action might have been purely a common-law action for damages, but certain it is that the husband's action is a purely statutory action * * *"

This last above quoted decision in Thomas v. Daues, supra, has been followed consistently in Missouri since 1926. By this decision the Supreme Court of Missouri expressly overruled its decision rendered in the Proctor case 50 years prior thereto because they found it was clearly erroneous and incorrect and fearlessly announced their decision in harmony with the clear and unambiguous statute and in justice to the persons within the provisions of the statute.

It is interesting to note that the appellate courts of four states which in early cases held that the wrongful death act was one

of survival later specifically overruled their previous holdings as erroneous and declared that the statute created a new cause of action. These courts saw their own error and did not place the blame and responsibility on the legislature but corrected their own error by overruling their former decisions in order to get in line with the almost unanimous authority on the subject. These courts were those of Missouri, Alabama, Ohio and Pennsylvania. See 16 Am. Jur., P. 48 and 49, Note 7 and Kennedy v. Davis, 171 Ala. 609, 55 So. 104, Ann.Cas. 1913B, 225.

While we recognize the general rule which is that where a state adopts a statute from another state, it adopts the judicial construction placed upon it by that state we also must recognize the exceptions to that rule which are that such a construction is unsound, or that some good reason appears for not following such construction, or that the courts of the state adopting the statute should see proper to refuse to follow such decisions as sound interpretations of the statute. Dow v. Simpson, 17 N.M. 357, 132 P. 568; Chetham-Strode v. Blake, 19 N.M. 335, 142 P. 1130; Palmer v. Town of Farmington, 25 N.M. 145, 179 P. 227; White v. Montoya, 46 N.M. 241, 126 P.2d 471. When an exception appears, as in the present case and in Hogsett v. Hanna, supra, the rule does not apply.

Of course, under the common law there was no cause of action for death caused by wrongful act of another but the cause of action was authorized and created by what is known as Lord Campbell's Act by the British Parliament in 1846. It was entitled "An Act for Compensating the Families of Persons Killed by Accident." It was passed as a single act and not in connection with any other legislation respecting any other type of tort or action therefor. An exact copy of the Act is found in Chitty's English Statutes, 6th Edition, Volume 4, Pages 587 to 589. From the beginning and throughout it was treated by the courts of England as creating a new cause of action unknown to the common law.

Referring to the limitation of time within which an action should be commenced under the Act the following is quoted:

"And every such action shall be commenced within twelve (12) calendar months after the death of such deceased person."

While the original Lord Campbell's Act was passed as one act without being combined with any other legislation we find that in America the statute based upon Lord Campbell's Act, which was passed by the majority of the legislatures of the states was enacted in a large number of states as a part only of an act creating and authorizing also numerous tort actions of an entirely different nature than the action of tort causing death. That is, the

wrongful death statute in America in many states is only a portion of some chapter dealing with many types of action in tort created by such act.

Such was the case both in Missouri and in New Mexico as well as in numerous other states. In Missouri the act was passed in 1855 and was entitled "An Act of Damages and Contributions in Actions of Tort." In the first section the act authorized an action for damages against a person who had falsely and maliciously published that any person has been guilty of adultery. The second, third and fourth sections contained a reenactment in all material respects of the Lord Campbell's Act or, as it is now termed, the wrongful death act. The fifth section authorizes actions against owners or operators of railroads for the injuring or killing of animals and for the recovery of damages therein for their value. The sixth section provides: Gen.Stats. of Mo.1866, Chap. 147;

"Every action instituted by virtue of the preceding sections of this chapter, shall be commenced within one year after the cause of such action shall accrue."

It will be noted that the original Lord Campbell's Act provides that the action shall be commenced within one year from death, while the Missouri statute as well as our own, provides that it shall be brought within one year after the cause of action shall have accrued but in the Missouri statutes and in the New Mexico statutes which were passed, the wrongful death act was only a part thereof and there were numerous other actions for tort created and authorized by other sections of the same act and the section with reference to the limitation of time for the bringing of the action in the said two states related to all types of action authorized in the whole act. There were several types of tort actions so authorized in both the New Mexico and the Missouri acts that were not in any wise connected with or based upon death.

The so-called wrongful death statute of New Mexico was originally passed in 1882 and appears in the Session Laws as Chapter 61 entitled: "An Act Relating to Damages." The first three sections of the New Mexico Act are the same as the Lord Campbell's Act and the Missouri statute above mentioned in all material respects but there are nine sections to the act with only the first three bearing upon the newly created cause of action for death caused by the wrongful act, neglect or default of another, or caused by common carriers, while the remaining sections of the act relate to and authorize other and different actions in tort not in any way having to do with the death or injury of persons.

This New Mexico act, Chapter 61 of 1882 Session Laws, also authorizes suits

against persons who shall set fire to any woods, marshes or prairies whether he is the owner thereof or not if the fire causes any damage to any other person, and provides for the recovery of double damages to the injured party. It also provides for a different penal action against one willfully setting fire to woods, marshes, or prairies. This same act also provides for and authorizes the filing of actions against common carriers for the recovery of damages for animals injured or killed by such common carriers and for the procedure with reference thereto and finally, in the ninth section of said New Mexico laws, it is stated:

"Every action instituted by virtue of the provisions of this act must be brought within one year after the cause of action shall have accrued, * * *"

This limitation, of course, does not only apply to the torts resulting in the death of a person but to the other various tortuous actions with reference to damages to property which are mentioned and authorized therein.

The courts of the United States in construing the limitation within which the action for unlawful death must be commenced have made no distinction between the wrongful death statutes which employ the words "within one year after death" or those which have employed the words "within one year after the cause of action shall have accrued" and they have almost

unanimously held in states having statutes similar to ours that the action accrues at the time of death as is shown by authorities hereinafter cited.

In Chapter 61 of the Session Laws of 1882 of New Mexico entitled: "An Act Relating to Damages" the first section thereof dealt with the cause of action for wrongful death for which common carriers were made responsible and the second section dealt with the wrongful death caused by wrongful act, etc. of another (not common carrier). The first section, relating to railroad's liability, provided, after stating that the railroads should forfeit and pay for every person so dying the sum of $5000, as follows:

"* * * which may be sued and recovered; first, by the husband or wife of the deceased; or second, if there be no husband or wife, *or if he or she fails to sue within six months after such death, then by the minor child or children of the deceased;* * * *" (Emphasis ours.)

If there be no such relatives as named above then suit could be filed by father and mother, etc., or the survivor.

Attention is directed to the language of this portion of the statute itself creating the cause of action, which says:

"* * * or if he or she fails to sue within six months after such death,

808

then by the minor child or children of the deceased; * * *"

If, as contended for and decided by this court that the cause of action accrues at the time the tort was committed rather than at death what meaning can this phrase in the act have? It can only have any meaning when we construe the entire act in its plain and unambiguous language to mean that the action accrues at the time of death. If not, why would the act provide that if the surviving husband or wife did not sue within six months after death then another relative should bring the suit. If death were not the important event creating the new cause and beginning the running of the statute of limitations why was this phrase inserted in the act? What other meaning could it have? The majority opinion of the Court completely ignores this phrase of the statute.

The original act, found in said Chapter 61 of the Laws of 1882, provided that the cause of action, whether brought under the first section against common carriers, or brought under the second section against other persons, should be brought not by a representative of the deceased for the benefit of beneficiaries named in the statute as at present but that either action against common carriers or other persons should be brought by the specific relatives named in Section 1 of the Act; that is, first by the husband or wife of the deceased and, sec-

ond, if there be no husband or wife, or if he or she fails to sue within six months after death, then by the minor child or children of the deceased and third, by father or mother, etc.

It has been held by this Court, in Gallegos v. Atchison, T. & S. F. R. Co., 28 N.M. 472, 214 P. 579, that Section 24-102 of New Mexico Statutes 1941 Annotated, which was originally passed as Section 9 of Chapter 61 of the Session Laws of 1882, applies to both sections of our wrongful death act, the one relating to common carriers and the other section relating to other persons (not common carriers). Section 3 of said Chapter 61 of the Laws of 1882 states:

"All damages accruing under the last preceding section shall be sued for and recovered by the same parties and in the same manner as provided in section 1 of this act. * * *"

Section 1 of the act being the section relating to suits for wrongful death against common carriers and Section 2, which is referred to as the "last preceding section" is the one relating to acts against others than common carriers.

The said Section 3 then goes on as follows:

" * * * and in every such action the jury may give such damages, not exceeding five thousand dollars, as they may deem fair and just, with reference to the necessary *injury resulting from*

*such death, to the surviving parties, who may be entitled to sue. * * *"* (Emphasis ours.)

A reasonably intelligent reading of said chapter 61 of the Laws of 1882 and particularly those sections relating to a cause of action for wrongful death giving to the words found in that law their ordinary, common and usual meaning and giving but not ignoring the meaning of all parts of the sections relating to wrongful death, discloses that the statute is plain, clear and unambiguous and neither calls for nor demands any judicial interpretation. The author of the Court's opinion in this case cites and quotes from the opinion the case of De Graftenreid v. Strong, 28 N.M. 91, 206 P. 694, 695. It is not necessary for me to requote at length as the majority opinion has from this case, but only to quote the very last two lines, which read:

"There is no ambiguity in this statute, and it neither requires nor admits of construction."

With this authority quoted at greater length, in the Court's opinion it is difficult to understand how the author could so easily disregard the very authority which he quotes, which denies judicial construction to plain statutes and then proceeds to put a forced construction upon the statute based upon a prior decision above mentioned, which was dicta and which makes the present opinion of the Court in this case entirely erroneous and unjust.

In the Hogsett v. Hanna case this Court said:

"The determinative fact is whether or not Dr. Hogsett, if he had survived, could have maintained an action against the defendant for injuries received. This proposition is not disputed. This point is ruled against the defendant."

This is a simple statement of the law but why the Court quoted from Missouri cases holding that the wrongful death statute was one of survival rather than one creating a new cause of action is hard to understand for, as said before, it was entirely unnecessary to decide the issues. If Dr. Hogsett had not been killed by the negligent act of Hanna's servant, done in the course of his employment, but had suffered injuries and lived, of course, he would have had a suit for damages for his injuries under the law of New Mexico which recognized the man was liable for injuring another by his wrongful act or negligence, whether he did the act personally or through his servant in the course of his employment. That was admitted by all parties to the suit, but the wrongful death act provides relatives named may maintain an action for death where, if death had not resulted, the injured party could have maintained an action and recovered damages for his personal injury. This clause, according to most all authorities, was inserted in the Lord Campbell Act and in all acts fashioned after or based upon the Lord Campbell

Act, as it is in our own statute, for the purpose of putting some limitation upon the right of action for wrongful death and not allowing an action generally for any wrongful death in order for the relatives or the representative for the beneficiaries to sue for damages suffered by them on account of death.

As an instance, under the common law recognizing the fellow servant rule, a servant who was injured by the negligence or wrongful act of a fellow servant could not hold the master liable; neither could a servant who was injured by the negligence of his master, but also by his own contributory negligence, recover damages from his master. Likewise, under the said provisions of the wrongful death statute, if such servant had died his surviving relatives named in the statutes, or his representatives, would have had no cause of action against the master because, had he lived, he would have had no cause of action for his injury under such facts of the existing law.

In the Hogsett v. Hanna case, however, Dr. Hogsett would undoubtedly have had a cause of action, had he lived, against Hanna for any injuries caused because of the negligence of Hanna's servant and, that being the case, under the very explicit provisions of Section 2 in the said Chapter 61, Laws of 1882, now known as Section 24–101, New Mexico Statutes 1941 Annotated, Hogsett's administrator for the benefit of the named beneficiaries in the statute would have a cause of action against Hanna on account of the wrongful death of Dr. Hogsett caused by the negligence of Hanna's servant.

These conclusions are reached from any logical consideration of the common law as it existed and was applied in New Mexico and any fair or reasonable reading of the wrongful death statute. It is said in Restatement of the Law—Torts, Section 925:

"In the United States, likewise, the omission of the common law has been corrected by statutes colloquially known as 'death acts.' Most of these are modeled more or less closely on the English Act. * * *

"Although the death statutes create a new cause of action, both they and the survival statutes are dependent upon the rights of the deceased. Hence where no action could have been brought by the deceased had he not been killed, no right of action exists. * * * *"

In Restatement of the Law—Torts, Section 899–c, under the heading "Time when statute begins to run" we find the following:

"A cause of action for death is complete when death occurs; * * *"

We find, in 16 Am.Jur., Page 61, Sec. 82, the following:

"It is essential to the maintenance of an action for death by wrongful

act or default that the wrongful act or default be of such character as would, if death had not ensued, have entitled the person injured to maintain an action and recover damages in respect thereof. This limitation on the right of action is created by express provision of Lord Campbell's Act and by most of the statutes in the United States based thereon, * * *

"* * * It is usually held that the condition that the action be one which could have been maintained by the deceased if death had not ensued has no reference to the nature of the loss or injury sustained or the person entitled to recover, but to the circumstances attending the injury and the nature of the wrongful act or omission which is made the basis of the action. As stated by one court in construing this condition, it was inserted in the statute solely for the purpose of defining the kind and degrees of delinquency with which the defendant must be chargeable in order to subject him to the action. * * *"

Many states have statutes of survival and are shown to be such by their clear wording and intent. Many states have both acts of survival for actions in tort as well as other actions and also have wrongful death statutes based upon Lord Campbell's Act which is a distinct and different kind of action than that which existed in the living person, and is allowed by statute to survive.

The New Mexico Legislature, in 1880, two years prior to the passage of the wrongful death act, passed a survival statute which is found in Section 11 of Chapter 5 of the New Mexico 1880 Session Laws, now Sec. 27–110, N.M.Statutes 1941 Ann. This Chapter 5 was an act dealing with limitations of various kinds of actions and is the basis of our present Statutes of Limitations, many of the sections having not been changed to this day. Section 11 of said Chapter 5 of the Laws of 1880, provides that: "if the person entitled to a cause of action die within one year next previous to the expiration of the limitation above provided, the representatives of such persons shall have one year after such death within which to commence said action." This same revival statute is now found in our New Mexico Statutes 1941 Annotated as Section 27–110. At that time, and ever since that time, New Mexico has recognized that a person wrongfully injured by the tort of another might have a cause of action for damages suffered. So this general revivor statute in case of death by one having a cause of action certainly must have applied to persons having a cause of action in tort and who died within the provisions of said section.

This act has never been repealed or amended and therefore it is in force and

effect today and apparently would allow a representative of the deceased to bring an action for tort for the injuries suffered by virtue of the tort up to the time of death. Such action obviously would be different entirely from that new cause of action created by our so-called wrongful death act which authorized beneficiaries or relatives to sue for damages for the death and injuries suffered on account of the death by the relatives or beneficiaries specified in the action.

There are a few states which have amended their revival statutes so as to allow in the revived action damages not only occurring during the lifetime of the deceased but the damages suffered by virtue of his death to named relatives and in such states, there being only a few, the courts have held such statutes are, and are usually plainly shown by their wording to be, revival statutes. These, however, are entirely different in phraseology from acts copied from, or based upon, the Lord Campbell Act, such as are the wrongful death statutes of New Mexico.

The authorities holding that the wrongful death statutes create a new cause of action and that the action accrues from the time of death are so numerous that it would require several pages merely to cite them. They include decisions of the Supreme Court of the United States, of the highest courts of states having such a statute, as well as decisions from Britain. These decisions, which announce the modern and practically unanimous holding with reference to this question, can be found by the hundreds in the various annotated reports and it is unnecessary to take the time or space to cite or quote from them here but I shall confine myself to citing and quoting only a few such authors.

Justice Lurton of the Supreme Court of the United States, in the case of Michigan Cent. R. Co. v. Vreeland, 227 U.S. 59, 69, 33 S.Ct. 192, 195, 57 L.Ed. 421, said:

"The statute, in giving an action for the benefit of certain members of the family of the decedent, is essentially identical with the first act which ever provided for a cause of action arising out of the death of a human being,— that of 9 and 10 Vict. chap. 93, known as Lord Campbell's act. This act has been, in its distinguishing features, re-enacted in many of the states, and both in the courts of the states and of England has been construed not as operating as' a continuance of any right of action which the injured person would have had but for his death, but as a new or independent cause of action for the purpose of compensating certain dependent members of the family for the deprivation, pecuniarily, resulting to them from his wrongful death. * * *"

In an annotation in 74 A.L.R., beginning at Page 11, we find, on Page 14, the following statement made by the author of the annotation:

"The right of action so given for the benefit of persons specified by Lord Campbell's Act was held in Pym v. Great Northern R. Co. (1863) 4 Best. & S. 396, 122 Eng.Reprint, 508—Ex Ch., to be a new right of action beyond that which the deceased would have had, had he survived, and to be based upon different principles. And this has been the recognized construction of this act and of similar statutes in Canada and the United States."

For decisions from states having both survival acts and acts for wrongful death see annotation in 64 A.L.R. 646.

In Restatement of Law—Conflict of Laws—Sec. 390, Page 478, we find the following:

"At common law there was no action for the wrongful death of a human being. In 1846 Lord Campbell's Act created a cause of action in favor of the personal representative of a deceased person who was killed by the act of another under circumstances which would have supported an action against the other by the decedent, had he survived. Similar statutes have been enacted in practically every common law state, *the recovery being for the benefit of a designated person or class of persons for loss sustained by them through such wrongful death.* * * *"
(Emphasis ours.)

A brief statement of the theory of the principle involved is found in St. Francis Hospital v. Thompson by the Supreme Court of Florida reported in 159 Fla. 453, 31 So.2d 710, 711, 174 A.L.R. 810. The limitation in the Florida statute merely said that the action shall be commenced within two years and the court, in determining whether that meant two years from the death or two years from the date of the wrongful act, said:

"Plaintiff-appellee's cause of action is dependent on death and it is our conclusion that it was the intent of Section 95.11, F.S.A., to limit the commencement of the action from the time of the accrual of plaintiff's cause and plaintiff's cause accrued on death. It speaks of commencement of actions after so many years and by reasonable implication it means so many years after the right of action has accrued. Plaintiff's cause of action did not accrue by reason of the wrongful act alone. It took a wrongful act and death to give plaintiff a cause. The statute of limitations commenced to run upon death."

The annotation to the last mentioned case, beginning on Page 815 of 174 A.L.R. and

ending on Page 847, is quite comprehensive and recent. In this annotation are cited hundreds of cases upholding my contention that the cause of action was a new one and accrued upon death. The editor of the annotation makes the following statement on Page 817:

"According to the great weight of authority the limitation period applicable to a cause of action for wrongful death, whether contained in the statute creating the right of action or in the general statutes of limitation, begins to run from the time of the death complained of."

On Page 821 the annotator himself says, after several pages of citations:

"This view that the right of action accrues at death is maintained as against the contention that the time of the injury that resulted in death should mark the beginning of the running of the statute."

On Page 822 we find quoted from Louisville, E. & St. L. R. Co. v. Clarke, 1894, 152 U.S. 230, 14 S.Ct. 579, 38 L.Ed. 422:

" * * * The statute, in express words, gives the personal representative two years within which to sue. He cannot sue until the cause of action accrues, and the cause of action given by the statute for the exclusive benefit of the widow and children or next of kin cannot accrue until the person injured dies. Until the death of the person injured, the 'new grievance' upon which the action is founded does not exist."

See also Reading Co. v. Koons, 271 U.S. 58, 46 S.Ct. 405, 70 L.Ed. 835. From 174 A.L.R., Page 823 we quote:

"In Cummins v. Kansas City Pub. Serv. Co., 1933, 334 Mo. 672, 66 S.W. 2d 920, it was held that if a widow who brings action for her husband's death within six months thereafter, but dies within the year following his death, then his minor children may still maintain an action for his death if they commence it within the year following such death.

"In Fair v. Agur, 1939, 345 Mo. 394, 133 S.W.2d 402, it was held that the time ensuing for wrongful death always dates from the time of death, the cause of action accruing at that time to the widow, and after the lapse of six months, passing to the minor children."

From Page 833:

"The general rule under statutes giving a right of action for wrongful death and providing for the bringing of suit therefor within a specific period after the cause of action accrues, is that the cause of action given accrues at the time of death, not at the date of the injury from which death resulted or the date of the appointment of the administrator for the deceased."

From Page 836:

"While there is the authority of at least one case that under the general statute of limitations, when found applicable to an action for wrongful death, the limitation period starts to run as of the time of the injury rather than of the time of the death, there is practical unanimity in the view that even under such a general statute the time starts to run from the time of death. * * *"

There are certain states such as Iowa, Louisiana, Tennessee and Virginia that have survival statutes by their very terms. As said by the author of the annotation on Page 845:

"This appears to be the established rule in Iowa *under statutes which in effect declare that the action based on death by wrongful act shall be deemed to have accrued to the representative at the time it would have accrued to the deceased had he survived;* * * *"

From 16 Am.Jur. P. 48–49 the following is quoted:

"The view which is believed to be based upon the better reasoning that wrongful death statutes are not 'survival statutes,' but create a new cause of action, is the one supported by the courts generally and by the later trend of authority in particular. Under this view, the cause of action is not for the injury to the decedent, but is for the loss sustained by the beneficiaries because of the death and is distinct from any cause of action that the deceased might have had if he had survived. Various provisions of the statutes help to reach this conclusion, particularly provisions under which the damages recoverable consist of compensation for the losses of the beneficiaries, and do not include loss to the deceased or his estate, and under which damages recovered do not become assets of the estate, but are to be distributed to the beneficiaries. * * *"

and on Page 51 of the same volume it is said:

"* * * Although originating in the same wrongful act or neglect, the cause of action which survives or is revived by statute is for the wrong to the injured person, while the action for wrongful death is for the wrong to the beneficiaries. * * *"

On Page 113 of the same volume we find the following:

"* * * In some cases, it has been held that the limitations begin to run from the date of the injury, and not from the death of the injured person. This view is sometimes based on the ground that the statute does not create a new or independent cause of action, but merely continues the right of action which accrued to the deceased at the time of the injury. The general

rule, however, is that the cause of action accrues and the statute runs from the time of the death, and not from the time the tortious act was committed. * * * "

One cannot help observing that in the opinion rendered by Justice McGhee in a case of De Moss, State ex rel. v. District Court of Sixth Judicial Dist., 55 N.M. 135, 227 P.2d 937, which involved the same question we have here with reference to constructing our wrongful death statute, the Court did not attempt to justify nor defend the ruling made in Hogsett v. Hanna, supra, but merely followed the ruling in the last mentioned case as a precedent. The opinion in the De Moss v. District Court case, supra, did not make one statement approving the former decision in the Hanna case for its reasonableness, its logic, or because it was right or just. In fact, the opinion of the Court seems to intimate that it cared not to defend it but would merely follow it and not change the rule announced therein, although it admitted the argument for a change or overruling contained considerable force.

The opinion in the De Moss v. District Court case, supra, did mention that in 1933 the Supreme Court of Missouri had, in the case of Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W.2d 920, overruled the Missouri cases mentioned in the former New Mexico case of Hogsett

v. Hanna, but it failed to show that the Supreme Court of Missouri overruled the cases cited by our Court in Hogsett v. Hanna, supra, as early as and ever since 1926, as is before more particularly shown.

There is certainly good ground to believe that the decision upon the question of discussion was decided by this Court long before the case of Hogsett v. Hanna, supra, and that our earlier case was decided exactly opposite to the rule announced in Hogsett v. Hanna, supra.

The earlier case which we refer to is that of Gallegos v. Atchison, T. & S. F. Ry. Co., 28 N.M. 472, 214 P. 579, 580. In an opinion by Justice Bratton we find the following:

"The complaint was filed in the trial court on March 28, 1919, in which it was charged that the death of appellant's father, which was so wrongfully and negligently caused, occurred on October 1, 1914, which was more than four years prior to the filing of such complaint, and the sole question for our determination is whether or not the cause of action so pleaded was barred by the statute of limitations. * * * From what we have said, it is obvious that the original act of 1882, which requires suits of this character to be instituted within one year from and after the cause of action shall have accrued, was in force at the time

appellant's father met his death, as well as at all material dates subsequent thereto; and, this cause of action not having been instituted until more than four years thereafter, the trial court correctly directed a verdict in favor of appellee * * *."

This opinion is in harmony with the overwhelming weight of authority but it must be stated that even though the opinion in no way shows the fact, the original record filed in the case does show that death in this last mentioned case was instantaneous. The decedent was hit by a railroad train and instantly killed. These facts do not appear in the opinion but the Court, it will be seen, nowhere says or implies that the action accrues at the time of the commission of the tort and that the statute of limitations begins to run from that time. The Court only speaks of the time of death as the beginning of the right of action and the beginning of the running of the statute of limitations. The language used by this Court in that case is that familiarly used by courts that uphold the doctrine contended for in this minority opinion and it is believed that if the author of the opinion, Justice Bratton, intended to say that the statute ran from the time of the commission of the unlawful act he would have said so but, instead, he dates the time from death rather than from the date of the wrongful or negligent act.

The majority opinion quotes a decision construing a statute found in our Workmen's Compensation Law and construed in Vukovich v. St. Louis, Rocky Mountain & Pacific Co., 40 N.M. 374, 60 P.2d 356. The quotation and argument with reference to this case and statute is entirely irrelevant in the present case. The particular Workmen's Compensation Statute relating to claims being filed by beneficiaries reads as is stated in the majority opinion:

"* * * Provided, that no claim shall be filed or suit brought to recover such compensation unless claim therefor be filed *within one year after the date of such injury.*" (Emphasis ours.)

The prior part of this statute refers to any injury to workman from accidents arising out of and in the course of his employment. The words "such injury" could refer to nothing else than the injury of the workman just mentioned. The phraseology is so different and the statute so different from the wrongful death statute that the argument is of no benefit whatsoever. If authorities are wanted for the meaning of the words contained in the wrongful death statute they may be found by the hundreds in decisions of our highest federal and state courts.

In the case before us the tort complained of was committed December 28, 1949. The child for whose death the suit was brought died March 28, 1951 and the suit was filed less than seven months later on October

22, 1951. If the decedent had survived his injury (without considering his minority) he, as any other person, would have had three years from the date of the commission of the tort to file suit for damages. But, because he died fifteen months after the tort was committed, our Court says the statute for wrongful death gave no cause of action to the representative of the deceased. In other words, the cause of action authorized by the statute is barred before it is created: The cause of action for wrongful death died before it came into existence.

By a quotation from another case in the majority opinion the Court indicates that if its decision is unjust then it is for the legislature to change the statute. With such a suggestion I thoroughly disagree. The fault is with the Court and not the legislature. The Court has erroneously misconstrued the plain and unambiguous language of the statute passed by the legislature and thereby has rendered unjust decisions, refusing rights plainly granted by the legislative act.

Shall the Court persist in its error until the legislature takes affirmative action by a simple amendment adding to Sec. 24–102, New Mexico Statutes 1941 Annotated, something like the following words, to wit: "Notwithstanding the erroneous and unjust decisions of the Supreme Court of New Mexico the action mentioned in this section and in Sections 24–101 and 24–104, New Mexico Statutes 1941 Annotated, is intended and declared to be a new cause of action unknown to the common law and it accrues on the death of the decedent." As the error is entirely the fault of the Court let us correct our own mistake without compulsion from the legislature.

The order of the lower court dismissing the case should be reversed. The cause should be remanded with instructions to reinstate the same upon the docket for trial.